[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 456.]

LAYNE, APPELLANT, *v*. OHIO ADULT PAROLE AUTHORITY, APPELLEE, ET AL.

HOUSTON, APPELLANT, *v*. WILKINSON ET AL., APPELLEES.

LEE, APPELLEE, *v*. OHIO ADULT PAROLE AUTHORITY, APPELLANT, ET AL.

[Cite as *Layne v. Ohio Adult Parole Auth.,* 2002-Ohio-6719.]

*Criminal procedure—Parole—In any parole determination involving indeterminate sentencing, the Ohio Adult Parole Authority must assign an inmate the offense category score that corresponds to the offense or offenses of conviction.*

(Nos. 2001-1253, 2001-1266, 2001-1443, and 2001-1825—Submitted September 18, 2002—Decided December 18, 2002.)

APPEAL from and CERTIFIED by the Court of Appeals for Marion County, No. 9-2001-06, 2001-Ohio-2222.

CERTIFIED by the Court of Appeals for Allen County, No. 1-01-52, 2001-Ohio-2180.

APPEAL from the Court of Appeals for Montgomery County, No. 18833, 2001-Ohio-1466.

————————

SYLLABUS OF THE COURT

In any parole determination involving indeterminate sentencing, the Adult Parole Authority must assign an inmate the offense category score that corresponds to the offense or offenses of conviction.

————————

DOUGLAS, J.

{¶ 1} The Ohio Adult Parole Authority ("APA") adopted new parole guidelines on March 1, 1998. According to the APA, the revised guidelines were intended to "promote a more consistent exercise of discretion, and enable fairer and

more equitable decision-making" without removing the opportunity for consideration of parole eligibility on an individual case basis.

{¶ 2} The APA's new guidelines set forth a "parole guidelines chart" to determine the range of time that a prisoner should serve before being released. When considering inmates for parole the APA relies on a combination of two factors: the seriousness of an offender's criminal offense and the offender's risk of recidivism. To use the guidelines chart, each inmate is assigned two numbers that correspond to the above factors, an offense category score and a criminal history/risk score. The assigned numbers are then located on the guidelines chart, which is a grid with the offense category scores along the vertical axis and the criminal history/risk scores along the horizontal axis. At each intersection of the two scores there is an "applicable guideline range," indicating the range of months an inmate must serve before being released. During an inmate's first hearing under the new guidelines, the Parole Board generally gives an inmate a "projected release date," which presumably falls within the applicable guideline range. The projected release date is the date that the inmate is eligible for release, either on parole or on expiration of sentence.[1]

{¶ 3} Offense categories, at least in the form under consideration in these actions, were not in existence before the revised guidelines were introduced. The APA guidelines assign each type of criminal offense under Ohio law to an offense category. The guidelines contain 13 offense categories. The least serious criminal offenses are placed in category one. The more serious violations are placed in progressively higher numbered categories with the most serious in category 13. In

---

1. According to the APA guidelines, if the projected release date is not within ten years of the date of an inmate's first hearing, that inmate is automatically scheduled for a parole reconsideration hearing after ten years. Also according to the guidelines, an inmate will generally be released by the Parole Board on the projected release date if the inmate has satisfactorily observed the rules of the institution, has satisfied any special conditions set by the board as part of his projected release, has a suitable release plan, and the Parole Board has not received new adverse information relative to release.

determining an inmate's offense category score, the APA begins "by considering the conduct and circumstances established by the offense of which the defendant was convicted (offense of conviction)." However, the APA's revised guidelines permit the Parole Board to look beyond the offense of conviction to the circumstances surrounding the offense and assign an offense category score higher or lower than that applicable to the offense of conviction.

I

*Layne v. Ohio Adult Parole Authority;* case Nos. 2001-1253 and 2001-1266

{¶ 4} In December 1988, Wiley Layne was indicted in Marion County on (1) one count of kidnapping, an aggravated felony of the first degree, with a specification of a prior aggravated felony, (2) one count of abduction, an aggravated felony of the third degree, with a specification of a prior aggravated felony, and (3) two counts of having a weapon while under disability, a felony of the fourth degree, with a specification of a prior offense of violence. On January 3, 1989, as part of a plea agreement, Layne pled guilty to charges set forth in an amended indictment charging two counts of having a weapon while under disability and one count of abduction. In exchange for the plea, the Marion County Prosecuting Attorney withdrew the charge of kidnapping and the attached specification of a prior aggravated felony as well as the remaining specifications that had been attached to the other charges in the first indictment. Layne was sentenced by the trial court to an indefinite term of incarceration of two to ten years.

{¶ 5} In February 1990, Layne first became eligible for parole. Layne was denied parole at that time and has been denied parole each subsequent time he has been reviewed by the Parole Board.

{¶ 6} Layne had his first scheduled parole hearing under the APA's new guidelines on September 3, 1998. Had he been evaluated based only on his offenses of conviction, i.e., one count of abduction and two counts of having a weapon while under disability, Layne would have received, at the highest, an offense category

score of seven. Layne was assigned a criminal history/risk score of four. According to the guidelines chart, an offense category score of seven and a risk score of four results in an applicable guideline range of between 60 and 84 months before Layne could be released on parole. The Parole Board instead determined that Layne had committed kidnapping, the crime for which he was originally indicted but not convicted, and gave him an offense category score of ten. According to the guidelines chart, an offense category score of ten and a risk score of four indicated that Layne could not be released on parole until he served between 150 and 210 months, or 12.5 and 17.5 years.

{¶ 7} On August 31, 2000, Layne filed a complaint for declaratory judgment and injunctive relief in the Common Pleas Court of Marion County. Layne alleged, inter alia, that the APA violated his plea agreement by giving him an offense category score of ten for kidnapping as opposed to a score of seven for abduction, the crime to which he had pled guilty. Motions to dismiss were filed, pursuant to Civ.R. 12(B)(6), by the APA, the Ohio Department of Rehabilitation and Correction, and the Marion County Prosecuting Attorney. The trial court found that Layne had failed to state a cause of action and dismissed his complaint.

{¶ 8} Layne appealed the dismissal to the Marion County Court of Appeals. On May 29, 2001, the court of appeals affirmed the judgment of the trial court. The court of appeals certified that its decision was in conflict with the decision of the Second District Court of Appeals in *Randolph v. Ohio Adult Parole Auth.* (Jan. 21, 2000), Miami App. No. 99-CA-17, 2000 WL 43712.

{¶ 9} This cause is now before this court upon our allowance of a discretionary appeal (case No. 2001-1266) and upon our determination that a conflict exists (case No. 2001-1253).

II

*Houston v. Wilkinson;* case No. 2001-1443

{¶ 10} In 1981, Gerald Houston was indicted in Allen County on one count of aggravated burglary, two counts of kidnapping, three counts of aggravated robbery, and two counts of attempted murder. On January 20, 1982, Houston entered into a plea agreement with the Allen County Prosecuting Attorney, whereby Houston pled guilty to charges in an amended indictment, i.e., one count of aggravated burglary, three counts of aggravated robbery, and two counts of attempted murder. As part of the plea agreement, the state agreed to drop the two counts of kidnapping charged in the original indictment. Houston was then sentenced to an indeterminate term of incarceration of 20 to 100 years.

{¶ 11} Houston attended his first Parole Board hearing on February 22, 1999. Based on his plea of guilty to two counts of attempted aggravated murder, the Parole Board initially gave Houston an offense category score of ten and, in addition, gave him a criminal history/risk score of one. These scores resulted in an applicable guideline range of 120 to 180 months of incarceration before Houston could be paroled. The Parole Board, however, decided that an upward departure from offense category ten was warranted based in part on its conclusion that Houston had committed an attempted rape as part of his offense, a crime for which Houston had been neither indicted nor convicted. Houston was then reclassified and given an offense category score of 12, meaning he would have to serve between 240 and 300 months before he could be paroled.

{¶ 12} For reasons not apparent from the record, Houston was granted additional parole hearings on August 4, 1999, and December 2, 1999. At both hearings, after initially being assigned an offense category score of ten, which corresponded with his offenses of conviction, the Parole Board reset Houston's offense category score to 12, resulting in an applicable guideline range of 240 to 300 months before release. At both the August and December hearings, the Parole

Board cited the "unusually aggravated nature of the offense behavior" as a reason for the upward departure from the guidelines. In addition, at the December hearing, the Parole Board again determined that Houston had sexually assaulted a female victim. After the December hearing, the Parole Board decided that Houston should serve 270 months before being considered for parole and his next parole review was continued until 2004.

{¶ 13} On November 6, 2000, Houston filed a complaint for declaratory judgment and injunctive relief in the Court of Common Pleas of Allen County. In his complaint, Houston alleged that his plea agreement was breached when he was assigned an offense category score higher than that corresponding to his offenses of conviction. The trial court dismissed Houston's complaint for failure to state a claim upon which relief could be granted.

{¶ 14} Houston appealed the decision to the Allen County Court of Appeals. On June 29, 2001, the court of appeals affirmed the judgment of the trial court. Thereafter, the court of appeals certified that its decision was in conflict with the decision of the Second District Court of Appeals in *Randolph v. Ohio Adult Parole Auth.* (Jan. 21, 2000), Miami App. No. 99-CA-17, 2000 WL 43712. The court of appeals further noted that the same issue had been certified by the Marion County Court of Appeals in *Layne*.

{¶ 15} This cause is now before the court upon our determination that a conflict exists.

III

*Lee v. Ohio Adult Parole Authority;* case No. 2001-1825

{¶ 16} In November 1989, the Montgomery County Grand Jury returned an indictment charging Howard Lee with one count of aggravated murder with an attached firearm specification. On January 25, 1990, Lee entered into a plea agreement with the Montgomery County Prosecuting Attorney, whereby the charge of aggravated murder in the indictment was reduced to the lesser included offense

of involuntary manslaughter during the commission of a felony, and, in exchange, Lee pled guilty to the reduced charge and also pled guilty to the firearm specification. The trial court accepted the plea agreement and sentenced Lee to an indefinite term of incarceration of not less than nine years and not more than 25 years with three years mandatory on the firearm specification to be served before the indefinite term.

{¶ 17} Lee attended a hearing before the Parole Board on October 21, 1998. At the hearing Lee was assigned an offense category score of 13 for aggravated murder rather than the offense category score of eight for involuntary manslaughter. In conjunction with Lee's criminal history/risk score of six, Lee's applicable guideline range was 360 months to life, which meant that he would not be considered for parole until he served a minimum of 360 months, or 30 years. Thus, Lee would be required to serve his maximum term of 28 years without chance of parole.

{¶ 18} On May 4, 2000, Lee filed a complaint for declaratory judgment and injunctive relief in the Court of Common Pleas of Montgomery County.[2] In his complaint, Lee alleged that the APA had violated his plea agreement by assigning him an offense category score higher than the category score applicable to his offense of conviction. The matter was referred to a magistrate for trial and decision. On January 29, 2001, the magistrate granted summary judgment in favor of Lee and directed the APA to assign Lee the offense category score for involuntary manslaughter for parole consideration.[3] On March 23, 2001, the trial court issued an order adopting the magistrate's decision.

---

2. Lee's initial cause of action was dismissed and the Montgomery County Court of Appeals affirmed the judgment because of Lee's failure to comply with the filing-fee waiver requirements set forth in R.C. 2969.25(C). *Lee v. Adult Parole Auth.* (Apr. 7, 2000), Montgomery App. No. 17976. Lee subsequently filed a second complaint, which is the subject of this appeal.

3. Summary judgment was also granted in favor of the Montgomery County Prosecuting Attorney, dismissing him as a defendant.

{¶ 19} The APA appealed from the trial court's decision to the Montgomery County Court of Appeals. On August 31, 2001, the court of appeals affirmed the judgment of the trial court.

{¶ 20} This matter is now before this court on the allowance of a discretionary appeal.

IV

{¶ 21} The Third District Court of Appeals determined that the judgments rendered in *Layne* and in *Houston* conflicted with the decision issued by the Second District Court of Appeals in *Randolph v. Ohio Adult Parole Auth.* (Jan. 21, 2000), Miami App. No. 99-CA-17, 2000 WL 43712. The Third District certified the following question:

{¶ 22} "Is a plea agreement breached when the Ohio Adult Parole Authority ('APA') classifies an offender, for purposes of its discretionary parole guidelines, according to the nature of the offense rather than the lesser offense to which the plea is entered when the plea agreement has been fully performed by the prosecutor and the sentencing court, and the APA's classification will not result in the offender being incarcerated beyond the maximum sentence under the plea agreement[?]"

{¶ 23} In *Lee*, the third case before us, the Montgomery County Court of Appeals concluded that its decision conflicted with the decisions in *Layne* and in *Houston*, as well as with the judgments of the Third District Court of Appeals in *State v. Shaner* (July 27, 2000), Logan App. Nos. 8-99-16 and 8-99-17, 2000 WL 1049314, the Fifth District Court of Appeals in *Gearheart v. Ohio Adult Parole Auth.* (Aug. 23, 2001), Fairfield App. No. 01CA28, 2001 WL 1011455, and the Ninth District Court of Appeals in *State v. McMinn* (June 16, 1999), Medina App. No. 2927-M, 1999 WL 394811. Although the Montgomery County Court of Appeals determined that a conflict existed, the opinion certifying a conflict in *Lee*

8

was never filed with this court.[4] See S.Ct.Prac.R. IV(1). Nevertheless, our review leads us to the conclusion that the same issue is raised in each of the cases now before us. That issue is, in its simplest terms, whether the APA breaches a plea agreement when it assigns an inmate, for purposes of parole eligibility, an offense category score based on the alleged underlying criminal activity rather than on the offense or offenses of which the inmate was convicted.

{¶ 24} In each of the cases before us, the APA assigned the inmate an offense category score, not on the basis of the offenses of conviction, but, rather, on alleged criminal activity. Specifically, at Layne's parole hearing, the APA assigned Layne an offense category score for kidnapping despite the fact that the offense of kidnapping, while charged in the original indictment, was subsequently dropped by the prosecutor in exchange for Layne's plea. In Houston's case, the APA placed him in a higher offense category based in part on its conclusion that Houston had committed an attempted rape. Houston was neither charged with nor convicted of attempted rape. Finally, Lee was given the highest offense category score by the APA, 13, for allegedly committing an aggravated murder even though he was convicted of involuntary manslaughter. The result in each case was that substantially more time was required to be served before the inmate could be considered for release on parole than would have been required had each inmate been assigned scores according to their offenses of conviction. Moreover, in the cases of Layne and Lee, the APA's offense category score resulted in projected release dates that extended beyond the expiration of their maximum sentences.

{¶ 25} In *Randolph v. Adult Parole Auth.* (Jan. 21, 2000), Miami App. No. 99-CA-17, 2000 WL 43712, the Second District Court of Appeals determined that,

---

4. {¶a}    The question intended to be certified to this court in *Lee* is as follows:
   {¶b}    "Does the APA breach a plea agreement between a criminal defendant and the State of Ohio by determining parole eligibility based upon an offense or offenses of which the defendant was not convicted?"

as an agency of the state, the APA was bound by the state's plea agreement with a criminal defendant. Accordingly, the court in *Randolph* determined that the APA must begin its decision-making process concerning parole eligibility by assigning an inmate the offense category score that corresponds to the actual offense of which the inmate was convicted. The court of appeals noted, however, that the APA retained its discretion to determine that an inmate should serve his or her maximum sentence, and in making that determination could consider relevant facts and circumstances, including the offense or offenses set out in the indictment, as well as any circumstances surrounding the offense. We agree with the reasoning set forth in *Randolph.*

{¶ 26} At the time that each plea agreement under review here was entered into, R.C. 2967.13(A) provided that a prisoner serving a sentence of imprisonment for a felony for which an indefinite term of imprisonment is imposed "becomes eligible for parole at the expiration of his minimum term." Am.Sub.S.B. No. 1, 139 Ohio Laws, Part I, 1, 25; Am.Sub.H.B. No. 708, 142 Ohio Laws, Part III, 4853, 5010.

{¶ 27} We agree with the statement of the Montgomery County Court of Appeals in *Lee* that the words "eligible for parole" in former R.C. 2967.13(A) ought to mean something. Inherent in this statutory language is the expectation that a criminal offender will receive meaningful consideration for parole. In our view, meaningful consideration for parole consists of more than a parole hearing in which an inmate's offense of conviction is disregarded and parole eligibility is judged largely, if not entirely, on an offense category score that does not correspond to the offense or offenses of conviction set forth in the plea agreement.[5] Under the

---

5. While plea bargains are at issue in these matters, we note that, according to the APA guidelines, even if an offender is "acquitted" at trial of one offense and convicted of a lesser included offense, the APA is not precluded from placing the offender in an offense category based on the offense or offenses of which the offender was acquitted provided that the more serious offense is established by a preponderance of the evidence.

practice sanctioned here by the APA's revised guidelines, the language of former R.C. 2967.13 that an inmate "becomes eligible for parole at the expiration of his minimum term" is rendered meaningless.

{¶ 28} We recognize that the APA has wide-ranging discretion in parole matters. *State ex rel. Lipschutz v. Shoemaker* (1990), 49 Ohio St.3d 88, 90, 551 N.E.2d 160. R.C. 2967.03 vests discretion in the APA to "grant a parole to any prisoner for whom parole is authorized, if in its judgment there is reasonable ground to believe that * * * paroling the prisoner would further the interests of justice and be consistent with the welfare and security of society."[6] However, that discretion must yield when it runs afoul of statutorily based parole eligibility standards and judicially sanctioned plea agreements. Therefore, we hold that in any parole determination involving indeterminate sentencing, the APA must assign an inmate the offense category score that corresponds to the offense or offenses of conviction. We further emphasize, as did the court of appeals in *Randolph,* that the APA, when considering an inmate for parole, still retains its discretion to consider any circumstances relating to the offense or offenses of conviction, including crimes that did not result in conviction, as well as any other factors the APA deems relevant. *Hemphill v. Ohio Adult Parole Auth.* (1991), 61 Ohio St.3d 385, 386, 575 N.E.2d 148. See, also, Ohio Adm.Code 5120:1-1-07.

Conclusion

{¶ 29} Accordingly, the court of appeals' judgments in *Layne*[7] and *Houston* are reversed and the causes are remanded to the respective trial courts for further proceedings consistent with this opinion, and the judgment of the Montgomery County Court of Appeals in *Lee* is affirmed.

---

6. R.C. 2967.03 was amended in S.B. No. 2 in 1996, but the substance of the statute remained unchanged. Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, 7573.

7. According to Layne's Parole Board records, his maximum sentence has already expired.

Judgments accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

{¶ 30} Because I would decide these cases consistent with the reasoning expressed in *Robertson v. Ohio Adult Parole Auth.*, Franklin App. No. 01AP-1111, 2002-Ohio-4303, 2002 WL 1935700, I respectfully dissent.

_____

David H. Bodiker, Ohio Public Defender, Siobhan R. O'Keeffe, John Fenlon and Charles B. Clovis, Assistant Public Defenders, for Wiley Layne in case Nos. 2001-1253 and 2001-1266.

John A. Poppe and Eric J. Allen, for Gerald Houston in case No. 2001-1443.

David H. Bodiker, Ohio Public Defender, Siobhan R. O'Keeffe and Charles B. Clovis, Assistant Public Defenders, for Howard Lee in case No. 2001-1825.

Betty D. Montgomery, Attorney General, and Todd R. Marti, Assistant Attorney General, for Ohio Adult Parole Authority and Department of Rehabilitation and Correction.

William F. Schenck and Robert K. Hendrix, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association in case Nos. 2001-1253 and 2001-1266.

Barry W. Wilford and Mary Ann Torian, urging reversal for amicus curiae Ohio Association of Criminal Defense Lawyers in case Nos. 2001-1253 and 2001-1266.

Elizabeth I. Cooke and David E. Goldberger, urging reversal for amicus curiae Ankrom Class in case Nos. 2001-1253 and 2001-1266.

_____