DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Darryl Smith, has filed this original action requesting this court to issue a writ of mandamus ordering respondent, Ohio Adult Parole Authority ("APA"), to "obey and comply with the established law and requirements set forth by the Ohio Supreme Court" in Layne v. Ohio Adult Parole Auth.,97 Ohio St.3d 456, 2002-Ohio-6719, and place him in offense category one as a technical parole violator. As a result, relator seeks an evidentiary hearing and trial on all issues and claims, the assignment of a category one and enjoinment of consideration of offenses for which he was not convicted, a declaration that the 1998 Parole Hearing Guidelines and Practices violate ex post facto law and deny due process, and an order requiring respondent to comply with Ohio law concerning parole eligibility.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate converted respondent's motion to dismiss to a motion for summary judgment. The magistrate originally gave the parties until June 16, 2003 for submission of evidence and written briefs to the magistrate. The magistrate extended the time for relator to respond to the motion until July 3, 2003. Ultimately, the magistrate concluded that respondent was entitled to summary judgment because relator was assigned to offense category four that corresponded to his offenses of conviction, and therefore there was no violation of Layne. Relator did not dispute that he had been assigned to offense category four. Rather, relator argued that he was still misclassified in offense category four and that he belonged in offense category one as a technical parole violator.
 {¶ 3} Relator filed objections to the magistrate's decision claiming the Ohio APA failed to place relator in any parole category, that the magistrate refused to allow relator to conduct discovery, that the magistrate relied upon false pleadings and phony evidence including hearsay affidavits, that the magistrate held relator to "an impossible picky high pleading standard," that the magistrate was biased against relator, and that the use of 1998 Ohio Parole Guidelines violates the constitutional prohibition against ex post facto law.
 {¶ 4} Following independent review, pursuant to Civ.R. 53, we find that relator's objections are without merit. We find no evidence of bias or unfairness on the part of the magistrate. The magistrate has properly applied the appropriate standard for ruling on a motion for summary judgment, and we agree with the conclusion of the magistrate that respondent is entitled to summary judgment as a matter of law. Accordingly, we overrule relator's objections, we adopt the decision of the magistrate and, in accordance with that decision, respondent's motion for summary judgment is granted. Writ of mandamus denied.
Objections overruled; motion for summary judgment granted;writ denied.
 Bryant and Sadler, JJ., concur. APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Darryl Smith, : Relator, : v. : No. 03AP-267 Ohio Adult Parole Authority, : (REGULAR CALENDAR) Respondent. :
 MAGISTRATE'S DECISION Rendered on October 29, 2003 Darryl Smith, pro se.
Jim Petro, Attorney General, and John H. Jones, for respondent.
 IN MANDAMUS ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT {¶ 5} In this original action, relator, Darryl Smith, an inmate of the Mansfield Correctional Institution, requests a writ of mandamus ordering that respondent, Ohio Adult Parole Authority ("OAPA"), assign him to offense category one under the new parole guidelines that became effective March 1, 1998, because allegedly his status as a parole violator mandates that assignment under the law set forth in Layne v. Ohio Adult Parole Auth.,97 Ohio St.3d 456, 2002-Ohio-6719. Also, relator requests that this court declare that the new parole guidelines are in violation of the constitutional ban against ex post facto laws.
Findings of Fact:
 {¶ 6} 1. According to the complaint filed March 20, 2003, relator was convicted and sentenced for the offenses of felonious assault and intimidation by the Cuyahoga County Court of Common Pleas in 1983 and 1986. The sentences were imposed consecutively and aggregated in 1986 into an indefinite term of imprisonment of eight to 35 years.
 {¶ 7} 2. According to the complaint, relator was paroled on April 11, 1991, and then reimprisoned on November 15, 1991, as a "technical parole violator." Relator has remained imprisoned ever since.
 {¶ 8} 3. According to the complaint, under the new parole guidelines effective March 1, 1998, OAPA assigned all technical parole violators to offense category one, the lowest offense category under the new parole guidelines imposing the least amount of imprisonment until parole.
 {¶ 9} 4. According to the complaint, when relator was denied parole in November 1999, he was assigned to offense category seven under which OAPA imposed the maximum of 108 to 132 months imprisonment.
 {¶ 10} 5. According to the complaint, relator's assignment to offense category seven contravenes the law set forth in Layne,
supra. In his complaint, relator requests that this court issue a writ of mandamus ordering OAPA "to obey and comply with the established law and requirements set forth by the Ohio Supreme Court" in Layne by placing him in offense category one.
 {¶ 11} 6. On April 22, 2003, OAPA filed a motion to dismiss alleging that this action is now moot because on April 3, 2003, OAPA assigned relator to offense category four that corresponds to his offenses of conviction. In support of its motion to dismiss, OAPA attached to the motion as Exhibit A a copy of an Ohio Parole Board Decision Sheet regarding an April 3, 2003 parole hearing for inmate Darryl Smith.
 {¶ 12} 7. On May 30, 2003, the magistrate assigned to this action converted respondent's motion to dismiss to one for summary judgment pursuant to Civ.R. 12(B) and Civ.R. 56. On that date, the magistrate also notified the parties of the submission date for the motion for summary judgment.
 {¶ 13} 8. In response to the magistrate's conversion of the motion, on June 16, 2003, OAPA submitted the affidavit of Richard Spence executed June 13, 2003. Richard Spence is the Chief of Quality Assurance for OAPA. In his affidavit, Spence states that it is his duty in that capacity to ensure that the parole board guidelines are accurately and properly applied at parole hearings. Spence's affidavit states:
* * * Inmate Darryl Smith, #A188-842, was seen by a Hearing Panel of the Parole Board on December 11, 2002 at the Mansfield Correctional Institution. The Panel referred the case to a Central Office Board Review Hearing.
* * * The Central Office Board Review Hearing occurred on April 3, 2003. The Board voted to re-parole Inmate Smith on or after June 16, 2003 with Substance Abuse and Mental Health Screenings and Programming if Indicated (see copy of attached Ohio Parole Board Decision Sheets — Exhibit A).
Inmate's Placement Procedure
* * * The inmate only submitted a Plan A on his Parole Plan. His only Parole Plan was to Rodger Wisniski, a family friend, at 980 King Avenue, Building 8, Apartment 2, Columbus, Ohio 43212.
* * * Parole Officer Amanda Raglin, of the Columbus APA Region, was assigned to conduct the Placement Investigation for Inmate Smith. She called Mr. Wisniski's number and spoke to a male who stated they did not want Smith to reside at the residence. P.O. Raglin noted that the placement was rejected.
* * * Rodger Wisniski contacted Barbara Bell, Inmate Smith's case manager and stated he was not the person who answered the phone who refused the placement. He stated he would accept Inmate Smith to be placed with him. Ms. Bell contacted P.O. Raglin concerning Mr. Wisniski's call and Ms. Raglin stated she would review the placement.
* * * Mr. Wisniski also contacted Ms. Raglin's supervisor, Tracy Murphy. He cursed her out and threatened her. Based on Mr. Wisniski's behavior he was determined to be an unacceptable placement plan and the placement was rejected.
* * * Inmate Smith was contacted by Case Manager Bell and informed of the placement rejection. Inmate Smith did not provide any additional placement plans.
* * * Due to no acceptable placement plan the Adult Parole Authority arranged a placement for Inmate Smith in his county of conviction, Cuyahoga County, at the Harbor Light Complex. Harbor Light Complex stated they would accept him on June 20, 2003.
* * * On June 6, 2003[,] Case Manager Bell informed Inmate Smith of his parole release and placement plan. Inmate Smith submitted the attached letter (Exhibit B) where he refused a Halfway House or Homeless Shelter Placement. He told Ms. Bell he refuses his parole. He wants his parole rescinded and wants to have a new hearing. He stated he would likely be a security risk if released if the transport individual to the Halfway House put a hand on him. He stated he would defend himself (see Exhibit C — attached incident report).
* * * The Parole Board is placing a stop on Inmate Smith's parole to further investigate the matter, since Inmate Smith stated he would be a security risk if paroled. The Board plans to resolve this matter via an inmate interview or hearing within the next thirty to sixty days.
 {¶ 14} 9. Attached to Spence's affidavit as Exhibit A is an Ohio Parole Decision Sheet relating to an April 3, 2003 hearing for inmate Darryl Smith. The exhibit lists the offenses of conviction and then indicates that relator is assigned to category four. In addition, the exhibit shows that relator's "criminal history/risk score" is seven.
 {¶ 15} 10. On July 8, 2003, relator responded to the motion for summary judgment. Relator submitted his own affidavit executed June 30, 2003. In his affidavit, relator asserts at paragraph 22 that this action is not moot because he remains imprisoned and because he allegedly "remain[s] still mis-classified [sic] by the A.P.A. in Category 4 (which is 3 ranges higher than my correct Guideline Category)."
 {¶ 16} 11. On August 25, 2003, relator filed motions and another affidavit that he executed on August 20, 2003. In his affidavit, relator continues to claim that he belongs in offense category one as a "technical parole violator."
 {¶ 17} 12. While relator continues to assert that the OAPA must assign him to offense category one because of his status as a so-called "technical parole violator," relator does not in actuality claim that category four fails to correspond to his offenses of conviction.
Conclusions of Law:
 {¶ 18} It is the magistrate's decision that this court grant respondent's motion for summary judgment, as more fully explained below.
 {¶ 19} In Layne, supra, the Supreme Court of Ohio recognized that OAPA had adopted new parole guidelines on March 1, 1998. According to the Layne court:
The APA's new guidelines set forth a "parole guidelines chart" to determine the range of time that a prisoner should serve before being released. When considering inmates for parole the APA relies on a combination of two factors: the seriousness of an offender's criminal offense and the offender's risk of recidivism. To use the guidelines chart, each inmate is assigned two numbers that correspond to the above factors, an offense category score and a criminal history/risk score. The assigned numbers are then located on the guidelines chart, which is a grid with the offense category scores along the vertical axis and the criminal history/risk scores along the horizontal axis. At each intersection of the two scores there is an "applicable guideline range," indicating the range of months an inmate must serve before being released. During an inmate's first hearing under the new guidelines, the Parole Board generally gives an inmate a "projected release date," which presumably falls within the applicable guideline range. The projected release date is the date that the inmate is eligible for release, either on parole or on expiration of sentence.
Offense categories, at least in the form under consideration in these actions, were not in existence before the revised guidelines were introduced. The APA guidelines assign each type of criminal offense under Ohio law to an offense category. The guidelines contain 13 offense categories. The least serious criminal offenses are placed in category one. The more serious violations are placed in progressively higher numbered categories with the most serious in category 13. In determining an inmate's offense category score, the APA begins "by considering the conduct and circumstances established by the offense of which the defendant was convicted (offense of conviction)." However, the APA's revised guidelines permit the Parole Board to look beyond the offense of conviction to the circumstances surrounding the offense and assign an offense category score higher or lower than that applicable to the offense of conviction.
Id. at ¶ 2-3. (Fn. omitted.)
 {¶ 20} In Layne, supra, the Supreme Court of Ohio decided three cases involving inmates Wiley Layne, Gerald Houston, and Howard Lee. The Layne court states:
In each of the cases before us, the APA assigned the inmate an offense category score, not on the basis of the offenses of conviction, but, rather, on alleged criminal activity. Specific-ally, at Layne's parole hearing, the APA assigned Layne an offense category score for kidnapping despite the fact that the offense of kidnapping, while charged in the original indictment, was subsequently dropped by the prosecutor in exchange for Layne's plea. In Houston's case, the APA placed him in a higher offense category based in part on its conclusion that Houston had committed an attempted rape.
Houston was neither charged with nor convicted of attempted rape. Finally, Lee was given the highest offense category score by the APA, 13, for allegedly committing an aggravated murder even though he was convicted of involuntary manslaughter. The result in each case was that substantially more time was required to be served before the inmate could be considered for release on parole than would have been required had each inmate been assigned scores according to their offenses of conviction. Moreover, in the cases of Layne and Lee, the APA's offense category score resulted in projected release dates that extended beyond the expiration of their maximum sentences.
In Randolph v. Adult Parole Auth. (Jan. 21, 2000), Miami App. No. 99-CA-17, * * * the Second District Court of Appeals determined that, as an agency of the state, the APA was bound by the state's plea agreement with a criminal defendant. Accordingly, the court in Randolph determined that the APA must begin its decision-making process concerning parole eligibility by assigning an inmate the offense category score that corresponds to the actual offense of which the inmate was convicted. The court of appeals noted, however, that the APA retained its discretion to determine that an inmate should serve his or her maximum sentence, and in making that determination could consider relevant facts and circumstances, including the offense or offenses set out in the indictment, as well as any circumstances surrounding the offense. We agree with the reasoning set forth in Randolph.
At the time that each plea agreement under review here was entered into, R.C. 2967.13(A) provided that a prisoner serving a sentence of imprisonment for a felony for which an indefinite term of imprisonment is imposed "becomes eligible for parole at the expiration of his minimum term." Am.Sub.S.B. No. 1, 139 Ohio Laws, Part I, 1, 25; Am.Sub.H.B. No. 708, 142 Ohio Laws, Part III, 4853, 5010.
We agree with the statement of the Montgomery County Court of Appeals in Lee [Lee v. Adult Parole Auth. (Apr. 7, 2000), Montgomery App. No. 17976] that the words "eligible for parole" in former R.C. 2967.13(A) ought to mean something. Inherent in this statutory language is the ex-pectation that a criminal offender will receive meaningful consideration for parole. In our view, meaningful consideration for parole consists of more than a parole hearing in which an inmate's offense of conviction is disregarded and parole eligibility is judged largely, if not entirely, on an offense category score that does not correspond to the offense or offenses of conviction set forth in the plea agreement. Under the practice sanctioned here by the APA's revised guidelines, the language of former R.C. 2967.13 that an inmate" becomes eligible for parole at the expiration of his minimum term" is rendered meaningless.
We recognize that the APA has wide-ranging discretion in parole matters. State ex rel. Lipschutz v. Shoemaker (1990),49 Ohio St.3d 88, 90 * * *. R.C. 2967.03 vests discretion in the APA to "grant a parole to any prisoner for whom parole is authorized, if in its judgment there is reasonable ground to believe that * * * paroling the prisoner would further the interests of justice and be consistent with the welfare and security of society." However, that discretion must yield when it runs afoul of statutorily based parole eligibility standards and judicially sanctioned plea agreements. Therefore, we hold that in any parole determination involving indeterminate sentencing, the APA must assign an inmate the offense category score that corresponds to the offense or offenses of conviction. We further emphasize, as did the court of appeals in Randolph, that the APA, when considering an inmate for parole, still retains its discretion to consider any circum-stances relating to the offense or offenses of conviction, including crimes that did not result in conviction, as well as any other factors the APA deems relevant. Hemphill v. Ohio AdultParole Auth. (1991), 61 Ohio St.3d 385, 386 * * *. See, also, Ohio Adm. Code 5120:1-1-07.
Id. at ¶ 24-28. (Fns. omitted.)
 {¶ 21} Here, unlike the scenarios in Layne, relator does not actually claim that OAPA assigned him to an offense category that fails to correspond to his offenses of conviction. Unlike the scenarios in Layne, relator claims that OAPA was required to assign him to offense category one after he was reimprisoned for violation of his parole. In effect, relator here claims that OAPA may not assign him to the offense category that corresponds to his offenses of conviction, but must assign him to offense category one because of his status as a parole violator. TheLayne case clearly does not compel such a result.
 {¶ 22} Summary judgment is appropriate when the movant demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, said party being entitled to have the evidence construed most strongly in his favor. Turner v.Turner (1993), 67 Ohio St.3d 337, 339-340; Bostic v. Connor
(1988), 37 Ohio St.3d 144, 146; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66. The moving party bears the burden of proving no genuine issue of material fact exists. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115.
 {¶ 23} As previously noted, through the affidavit of Richard Spence, respondent OAPA has submitted a copy of its Ohio Parole Board Decision Sheet relating to an April 3, 2003 hearing for inmate Darryl Smith. That exhibit indicates that relator was assigned to category four for the offenses of conviction. In addition, the exhibit shows that relator's "criminal history/risk score" is seven.
 {¶ 24} Given that relator does not claim that category four fails to correspond to his offenses of conviction, relator has no claim under Layne, supra. Accordingly, there is no genuine issue of material fact and respondent is entitled to judgment as a matter of law as to relator's claim under Layne, supra.
 {¶ 25} As previously noted, relator also claims that OAPA's application of the new parole guidelines violates the constitutional ban against ex post facto laws. This issue has already been decided. Application of the new parole guidelines to relator does not constitute ex post facto imposition of punishment. State ex rel. Bealler v. Ohio Adult Parole Auth.
(2001), 91 Ohio St.3d 36. Accordingly, relator's ex post facto claim fails to state a claim upon which relief in mandamus can be granted.
 {¶ 26} Accordingly, for all the above reasons, it is the magistrate's decision that this court grant respondent's motion for summary judgment and that this action be dismissed.
 /s/Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE