[Cite as *State ex rel. Anderson v. Chambers-Smith*, 2021-Ohio-3653.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Herbert Anderson, | : | |
| Relator, | : | No. 20AP-429 |
| v. | : | (REGULAR CALENDAR) |
| Annette Chambers-Smith, Director et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on October 12, 2021

**On brief:** *Herbert Anderson,* pro se.

**On brief:** *Dave Yost,* Attorney General, and *George Horvath,* for respondents.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Herbert Anderson, has filed this original action requesting that this court issue a writ of mandamus ordering respondents, Annette Chambers-Smith, Director of the Ohio Adult Parole Authority ("OAPA"), and the Ohio Bureau of Sentence Computation ("BOSC"), to correct allegedly inaccurate information in his criminal and institutional records that were considered when determining his eligibility for parole and to release him from custody pursuant to R.C. 2967.15(B). Anderson also seeks an award of costs in this action.

{¶ 2} This court referred the matter to a magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued a decision which

is appended hereto, including findings of fact and conclusions of law, and recommended that this court deny relator's requested writ of mandamus. Relator has filed objections to the magistrate's decision.

{¶ 3} We first note that the magistrate's decision was filed June 23, 2021, and relator's objections to the magistrate's decision were filed July 23, 2021. Civ.R. 53(D)(3)(b)(i) requires that objections to a magistrate's decision be filed within 14 days of the filing of the decision. Furthermore, although Civ.R. 53(D)(5) permits the court to extend the time for a party to file objections to a magistrate's decision for good cause shown, in this case relator neither sought an extension of time nor presented any argument showing good cause for the delay in filing his objections. Therefore, relator's objections were untimely. It is well-settled that this court need not address untimely objections to a magistrate's decision. *State ex rel. Dailey v. Dept. of Rehab. & Corr.*, 10th Dist. No. 20AP-410, 2021-Ohio-1079, ¶ 6 (declining to address objections to a magistrate's decision that were filed 31 days late); *State ex rel. Keith v. Adult Parole Auth. Dept. of Rehab. & Corr.*, 10th Dist. No. 10AP-663, 2011-Ohio-1195, ¶ 3, citing *State ex rel. Rosch v. Ohio Civ. Rights Comm.*, 10th Dist. No. 04AP-340, 2004-Ohio-1625, ¶ 3 (declining to address objections to a magistrate's decision that were filed 5 days late). Accordingly, we decline to address relator's objections.

{¶ 4} Having declined to consider relator's untimely objections, we need only determine whether "there is an error of law or other defect evident on the face of" the magistrate's decision. *See* Civ.R. 53(D)(4)(c). After an examination of that decision, we have found no error of law or other defect on its face. Furthermore, we note that, as pointed out by the magistrate in his decision, respondents submitted with their certified evidence an affidavit provided by Charlene Gregory, a correctional records sentence computation auditor with BOSC with accompanying documentation which accurately summarizes

relator's record as it pertains to the number of times relator was previously released on parole, which is eight times rather than the nine as stated by the parole board at the 2012 hearing.  Similarly, Gregory's affidavit accurately summarizes relator's record as it pertains to the total number of inmate numbers relator has had, which is five numbers rather than the seven as stated by the parole board at the 2012 hearing.  Thus, the evidence is clear that relator's records are themselves accurate and contain no error to correct.

{¶ 5}    Accordingly, based on the foregoing, we adopt the magistrate's decision as our own, including the findings of fact and the conclusions of law therein, and we deny relator's request for a writ of mandamus.

*Writ of mandamus denied.*

DORRIAN, P.J., and JAMISON, J., concur.

_____

## **APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Herbert Anderson, | : | |
| Relator, | : | |
| v. | : | No. 20AP-429 |
| Annette Chambers-Smith, Director, et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on June 23, 2021

*Herbert Anderson,* pro se.

*Dave Yost,* Attorney General, and *George Horvath,* for respondents.

IN MANDAMUS

{¶ 6}  Relator, Herbert Anderson, seeks a writ of mandamus ordering respondents, Annette Chambers-Smith, Director of the Ohio Adult Parole Authority ("OAPA"), and the Ohio Bureau of Sentence Computation ("BOSC"), to correct allegedly inaccurate information in his criminal and institutional records that were considered when determining his eligibility for parole.  Relator further proposes that respondents have a legal duty to release him from custody pursuant to R.C. 2967.15(B) and seeks an award of costs in this action.

Findings of Fact:

{¶ 7}  1. Relator is an inmate in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"), currently incarcerated at Richland Correctional Institution ("RCI") pursuant to a revocation of parole.

{¶ 8}   2. OAPA is a state agency with the duty and authority to address inmate parole release and revocation pursuant to R.C. 5149.01 et sec.  It maintains its principal offices in Franklin County, Ohio.

{¶ 9}   3. BOSC is a division of ODRC which, in conjunction or as a part of the Bureau of Records Management ("BORM"), maintains inmate judicial and institutional records and, among other functions, computes release dates for inmates.  ODRC's principal offices are located in Franklin County, Ohio.

{¶ 10}  4.  Relator's most recent incarceration is the result of his 2009 conviction in Lake County, Ohio pursuant to a plea of guilty to one count of attempted robbery and one count of receiving stolen property, whereupon relator was sentenced to 2 concurrent 18-month terms.  The conduct underlying this conviction also resulted in a revocation of relator's parole granted in previous cases.

{¶ 11} 5. Relator received a parole hearing on April 4, 2012.  The parole board denied parole and continued relator until April 1, 2015, giving the following rationale:

> Offender serving his 7th number, 9 total paroles, 2 final releases, 5 [parole revocations] and 2 [technical parole violator determinations]. Poor conduct since return continues with additional [institutional violation] tickets since last hearing. Offender takes no responsibility for his actions, blames drugs for everything but has no [substance abuse program] treatment since his return. Due to his extensive criminal history, poor supervision history and poor conduct while in prison, he is not suitable for release.

{¶ 12}  6.  By letter dated May 12, 2015, relator conveyed a request to BORM for copies of his criminal and institutional records in order to correct alleged inaccuracies in the documentation relied upon by the parole board.

{¶ 13}  7. Relator's complaint alleges that on May 12, 2015, he pursued an administrative action to correct the allegedly inaccurate information relied upon by the parole board.  The document cited in support of this allegation is his May 12, 2015 request for documents.

{¶ 14}  8.  Relator was again denied parole in 2015 and 2018.

{¶ 15}  9.  Relator again sought correction of the allegedly inaccurate information by letter to the OAPA dated September 16, 2019.

{¶ 16}  10.  A previous request for reconsideration by the parole board was denied by communication dated May 7, 2018 on the basis that the request for reconsideration did not

present or refer to relevant and significant new information unavailable at the time of hearing.

{¶ 17} 11. Relator filed his complaint seeking a writ of mandamus from this court on September 15, 2020. Attached to the complaint is relator's R.C. 2969.25(A) statement of prior civil actions and R.C. 2969.25(C) statement of his inmate account for the period March 2 through September 4, 2020. Respondents have not asserted any lack of statutory compliance for an inmate action, and the magistrate concludes that relator has complied with the requirements of R.C. 2969.25.

{¶ 18} 12. Respondents have submitted with their certified evidence the affidavit of Jennifer Clemans, a quality assurance analyst with OAPA, authenticating relator's "Parole Packet" as considered by the parole board in 2012.

{¶ 19} 13. Respondents also submitted as their exhibit B in the certified evidence an affidavit provided by Charlene Gregory, a correctional records sentence computation auditor with BOSC with accompanying documentation. Gregory's affidavit accurately summarizes the documentary evidence as follows:

> On June 20, 1978 Anderson was sentenced in Cuyahoga County on case numbers CR24500, CR24411, and CR23869. On CR24500 he was sentenced to 4 to 25 years for Aggravated Robbery 2911.01 with 73 days of jail credit granted on a sheriff's letter. On CR24411 he was sentenced to 4 to 25 years for Aggravated Robbery 2911.01 with 76 days of jail credit granted on a sheriff's letter. On CR23869 he was sentenced to 4 to 25 years for Aggravated Robbery 2911.01 with 146 days of jail credit * * * granted on a sheriff's letter. All cases were ordered to be run concurrently.
>
> He was admitted to ODRC on June 22, 1978 and given inmate number A151920. His maximum expiration date was calculated using 4 to 25 years with 73 days of jail credit for a max date of April 5, 2003. He was paroled on February 26, 1981. He was declared a technical parole violator on April 16, 1981 and was returned to prison on May 21, 1981.
>
> He went out to court and was sentenced on December 16, 1981 on Cuyahoga County case CR165603 to 4 to 25 years for Aggravated Robbery 2911.01. He was granted 146 days of jail

credit by a sheriff's letter and this case was ordered to be run consecutively with his current sentence. His maximum expiration date was then re-calculated using 8 to 50 years with 219 days of jail credit for a max date of November 4, 2027.

He was paroled on May 12, 1986 and declared a technical parole violator on October 6, 1986. He was restored to parole on March 3, 1987. He was given 122 days of lost time by the Adult Parole Authority for this time at large with [sic] was added to his maximum expiration date. This made his new max date March 5, 2028.

On May 27, 1987 he was sentenced in Cuyahoga County on case numbers CR216266 and CR217055. On CR216266 he was sentenced to 2 to 5 years for Carrying a Concealed Weapon 2923.12 and 2 to 10 years for Having a Weapon Under Disability 2923.13. On CR217055 he was sentenced to 2 to 5 years for Forgery 2913.31 and 2 to 10 years for Theft 2913.02. Both cases were ordered to run concurrently with the other, but were silent as to the parole cases.

He was returned to ODRC on June 4, 1987 and given inmate number A197140. His parole on A151920 was revoked on July 27, 1987. Because the new crimes were committed while he was on parole prior to Senate Bill 2, and not expressly ordered concurrent, the new cases were run consecutively with the maximum expiration date from A151920. His new maximum expiration date was calculated by adding 2 to 10 years with 84 days of jail credit to his old maximum expiration date, for a new max date of December 10, 2037.

He was paroled on September 17, 1991 and declared a parole violator at large on February 26, 1992. He was returned to ODRC on April 28, 1992 and was given 1 month and 15 days of lost time by the Adult Parole Authority, which was added to his maximum expiration of sentence date for a new max date of January 25, 2038.

He was paroled again on October 22, 1996 and declared a parole violator at large on March 13, 1997. He was taken into custody on March 21, 1997 and was returned to ODRC on June 6, 1997 as a parole violator. He was given 8 days of lost time by the Adult Parole Authority for the time at large and this was added to his maximum expiration of sentence for a new max date of February 2, 2038. He was paroled again on July 3, 2000.

On January 2, 2001 he was sentenced in Cuyahoga County on case CR399158. He was given eight months for Attempted

Assault on a Peace Officer 2903.13 F5, and was granted 124 days of jail credit in the journal entry.

On January 8, 2001 he was admitted to ODRC under inmate number A398408. We added five days of conveyance time to his jail credit for a total of 129 days, and calculated his sentence as 8 months with 129 days of credit. His parole was revoked on the previous Cuyahoga County cases on April 12, 2001 and continued until the expiration of stated term on his new felonies. Because the new crime was committed under Senate Bill 2 sentencing laws and CR399158 was not ordered to run consecutively with his parole cases, it was run concurrently with his max date. Cuyahoga County CR399158 expired on 05/02/2001 after which he was eligible for parole on his parole cases. He was paroled again on January 12, 2004.

On June 30, 2004 he was sentenced in Cuyahoga County on cases CR04451724 and CR04452455. On CR04451724 was given 9 months for Drug Possession 2925.11 F5 and 2 years for Intimidation 2921.03 F3. On CR04452455 he was given 2 years for Robbery 2911.02 F3. He was granted credit for time served on both cases.

On July 13, 2004 he was admitted to ODRC under inmate number A470899. Because he was given credit for time served on both cases, we used the dates on the included sheriff's letter to determine that he was to be given 70 days of jail credit on each case. He waived his Kellogg hearing on August 3, 2004. His parole was revoked on the previous Cuyahoga County cases on October 6, 2004 and continued until the expiration of stated term on his new felonies. Since the new crimes were committed under Senate Bill 2 and the new cases were not ordered consecutively with his parole cases, CR04451724 and CR04452455 were run concurrently with each other and with his maximum expiration date. CR04451724 and CR04452455 expired on April 20, 2006 after which he was again eligible for parole on his parole cases. He was paroled again on May 8, 2006.

He was declared a parole violator at large on March 30, 2007 and was restored while at large on May 17, 2007. He was given 48 days of lost time by the Adult Parole Authority for the time spent at large, and this was added to his maximum expiration of sentence for a new max date of March 22, 2038. He was not returned to prison at that time. He was again declared a violator at large on October 12, 2007, but was restored while at large on the same day, with no additional lost time assessed.

On August 4, 2009 he was sentenced in Lake County on case 09CR000410. He was sentenced to 18 months on one count of Attempted Robbery 2911.02 F4 and 18 months on one count of Receiving Stolen Property 2913.51 F4 with 62 days of jail credit given in the journal entry. The two counts were ordered to be run concurrently with each other.

On August 25, 2009 he was admitted to ODRC under inmate number A572384. His new sentence was calculated as 18 months with credit for the 62 days of jail credit given in the entry plus 20 days of conveyance time for a total of 82 days of jail credit. His parole was revoked on September 22, 2009 and continued to the expiration of stated term on his new felonies. Because his new crimes were committed under Senate Bill 2, and were not ordered to be served consecutively with his parole cases, Lake County case 09CR000410 was calculated as running concurrently with his maximum expiration date. Lake County 09CR000410 expired on 12/02/2010.

He is currently incarcerated on his parole cases only with his next hearing scheduled for October of 2023.

Discussion and Conclusions of Law:

{¶ 20} For this court to issue a writ of mandamus as a remedy addressing the actions of respondent, relator must establish by clear and convincing evidence that he has a clear legal right to the relief sought, that respondent has a clear legal duty to provide such relief, and that relator lacks an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 21} Relator asserts that the OAPA has denied him his clear legal right to a meaningful parole consideration that is based upon correct information. Generally, prisoners have no constitutional or statutory right to parole. *State ex rel. Henderson v. Ohio Dept. of Rehab. and Corr.,* 81 Ohio St.3d 267-68 (1998). Because there is no such right, a prisoner who is denied parole is not deprived of a protected liberty interest in instances in which state law makes the parole decision discretionary. *Id.* at 125. Because R.C. 2967.03 makes the parole decision discretionary, the potential parolee may not invoke due process to challenge allegedly inaccurate documentation underlying an unfavorable decision. *State ex rel. Hattie v. Goldhardt,* 69 Ohio St.3d 123, 126 (1994). However, in *State ex rel. Keith v. Ohio Adult Parole Auth.,* 141 Ohio St.3d 375, 2014-Ohio-4270, the Supreme Court of Ohio did describe a minimal standard in parole proceedings: "inherent

in the [statutory] language is 'the expectation that a criminal offender will receive meaningful consideration for parole.' " *Keith* at ¶ 21, quoting *Layne v. Ohio Adult Parole Auth.,* 97 Ohio St.3d 456, 2002-Ohio-6719, ¶ 25. Examining the parole-related provisions of Ohio Adm.Code 5120:1-1-07(B), the *Keith* court stated as follows:

> The existence of this formal process for considering parole rightly gives parolees some expectation that they are to be judged on *their own* substantively correct reports. Requiring the board to consider specific factors to determine the parolee's fitness for release would not mean anything if the board is permitted to rely on incorrect, and therefore irrelevant, information about a particular candidate.

(Emphasis sic.) *Keith* at ¶ 23.

> *Keith* further stated:

> However, having set up the system and defined at least some of the factors to be considered in the parole decision, the state has created a minimal due-process expectation that the factors considered at a parole hearing are to be as described in the statute or rule and are to actually and accurately pertain to the prisoner whose parole is being considered.

{¶ 22} Relator relies on *Keith* for the proposition that the parole board in his 2012 and subsequent parole hearings relied on inaccurate information when it concluded that relator had received seven inmate numbers, nine paroles, and two final releases. A review of the detailed information submitted by respondent through Gregory's affidavit and accompanying documentation discloses that relator was paroled in 1981, 1986, 1987, 1991, 1996, 2000, 2004, and 2006. Relator, then, was released on parole eight times, rather than nine as stated by the parole board at the 2012 hearing. Relator was classed as a parole violator at large in 1992, 1997, and twice in 2007. Parole was revoked in 1987, 2001, and 2004. Over the course of his various incarcerations, relator received at least five inmate numbers: 1978, A151-920; 1987, A197-140; 2001, A398-408; 2004, A470-899; 2009, A572-384. In sum, the evidence submitted by respondents here, without ruling out the existence of additional pertinent occurrences, amounts to eight paroles rather than nine, and five inmate numbers rather than seven.

{¶ 23} The first conclusion that must be drawn from the evidence is that it is not relator's inmate record and judicial history that is inaccurate in his OAPA and institutional file, but the totals derived by the parole board therefrom. Relator seeks correction to his

records, yet points to no error in the records themselves, only error in the parole board's no doubt laborious review of his extensive criminal and institutional history that led to an incidental error in totaling up the various unfavorable occurrences in relator's history. Relator, therefore, can show no *Keith* right to obtain a substantively corrected record, when the record considered by the parole board was in fact accurate, or at least relator has pointed to no specific error therein.

{¶ 24} The information cited by the parole board in its decision is globally correct, even if the sums drawn from it may—*may*—not be. The question remains whether the parole board, under the totality of the circumstances, denied relator a meaningful consideration for parole in its interpretation and evaluation of those records. Respondents have a clear legal duty to correct errors in the inmate's records pursuant to *Keith,* but for the parole board's decision itself, relator must show an abuse of discretion in the parole board's final determination.

{¶ 25} The parole board's discretion in parole matters is wide-ranging. *Keith* at 26*,* citing *Layne* at ¶ 28. The OAPA's decision to grant or deny parole is an executive function involving a high degree of official judgment or discretion and the discretionary authority to grant or deny parole release pursuant to R.C. 2967.01 has been delegated by the legislature. R.C. 2967.03; Ohio Adm.Code 5120:1-1-17(A) and (B); *Henderson* at 268; *Weatherspoon v. Mack,* 10th Dist. No. 07AP-1083, 2008-Ohio-2288, ¶ 13. While that discretion may "yield when it runs afoul of statutorily based parole eligibility standards," relator can point to no legal requirement that would compel his release were the parole board to have accepted the figures for parole releases and inmate numbers suggested by relator. *Layne* at ¶ 28. Relator has received meaningful consideration for parole, and the state of his judicial record and inmate history do not support any abuse of discretion on the part of the parole board in denying parole in the 2012 hearing or subsequent hearings. Relator has no clear legal right to correct non-existent errors in his record, nor a clear legal right to be released based on the parole board's alleged misinterpretation of those records by the parole board at the 2012 hearing. It is therefore the decision and recommendation of the magistrate that the requested writ of mandamus be denied. Relator's motion for costs is denied.

/S/ MAGISTRATE
MARTIN L. DAVIS

## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).