DECISION
{¶ 1} Relator, Ronald Kirkland, an inmate of the Mansfield Correctional Institute ("MCI"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Ohio Adult Parole Authority ("OAPA"), to vacate its April 12, 2005 decision setting his next parole hearing for December 1, 2006, which is 24 months following his arrest as a technical parole violator ("TPV"), and to enter a decision setting his parole release within a guideline range of zero to nine months.
 {¶ 2} This matter was referred to a magistrate of this court, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed an objection to the magistrate's decision.
 {¶ 3} Relator contends in his objection that the magistrate failed to address whether the OAPA was required to complete a criminal history/risk score instrument so that he would know his exact guideline range. However, relator fails to present any evidence or authority to support the proposition that the OAPA was under such a duty. Relator does cite Layne v. Ohio AdultParole Auth., 97 Ohio St.3d 456, 2002-Ohio-6719; however,Layne does not address this issue, and we find it inapplicable. Therefore, relator has failed to demonstrate the OAPA was under a clear legal duty to perform the requested act. See State ex.rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587, 589. Thus, relator's objection is without merit.
 {¶ 4} After an examination of the magistrate's decision, an independent review of the evidence, pursuant to Civ.R. 53, and due consideration of relator's objection, we overrule the objection and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objection overruled; writ denied.
Petree and French, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Ronald Kirkland,:
 Relator, :
v. : No. 05AP-1292
Ohio Adult Parole Authority, : (REGULAR CALENDAR)
 Respondent. :
 MAGISTRATE'S DECISION Rendered on August 30, 2006 Ronald Kirkland, pro se.
Jim Petro, Attorney General, and Janelle C. Totin, for respondent.
 IN MANDAMUS {¶ 5} In this original action, relator, Ronald Kirkland, an inmate of the Mansfield Correctional Institution ("MCI"), requests a writ of mandamus ordering respondent, Ohio Adult Parole Authority ("OAPA"), to vacate its April 12, 2005 decision setting his next parole hearing for December 1, 2006, which is 24 months following his arrest as a technical parole violator ("TPV"), and to enter a decision setting his parole release within a guideline range of zero to nine months.
Findings of Fact:
 {¶ 6} 1. According to OAPA documents submitted by the parties to this action, relator was arrested as a TPV on December 2, 2004.
 {¶ 7} 2. According to OAPA documents, on March 4, 2005, relator was given a post-revocation hearing. Following the March 4, 2005 hearing, the hearing officer recommended a Central Office Board Review ("COBR") hearing which was scheduled for April 12, 2005.
 {¶ 8} 3. Following the April 12, 2005 COBR hearing, the hearing panel, in a written decision, determined that relator will serve 20 additional months until his release or next hearing, thus recommending that his next hearing date occur on December 1, 2006. The COBR decision in effect sets the next hearing date at 24 months after the December 2, 2004 arrest date.
 {¶ 9} 4. The COBR panel explained its decision in writing:
Technical Parole Violations include[:] On 12/2/04 you failed to surrender to your lawful arrest in Youngstown, Ohio[.] Since 10/1/04 you have failed to keep your supervising officer informed of your residence[.] On 10/1/04 you failed to report to your p o as instructed[.] On 10/1/04 you failed to comply with a written sanction to successfully complete a SAP[.] On 12/2/04 you admitted to the use of alcohol[.] Central Office Board Review votes to continue offender based on the offender's poor history of parole supervision[.]
 {¶ 10} 5. Almost eight months after the COBR decision, relator filed this mandamus action on December 5, 2005. Thereafter, OAPA filed its answer to the complaint.
 {¶ 11} 6. Following the filing of evidence and completion of a briefing schedule, this action was submitted to the magistrate for his written decision.
Conclusions of Law:
 {¶ 12} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 13} Citing Layne v. Ohio Adult Parole Auth.,97 Ohio St.3d 456, 2002-Ohio-6719, relator claims that OAPA has a clear legal duty to place relator in a guideline range of zero to nine months because he is a TPV. According to relator, OAPA usually places a TPV in guideline range zero to nine months but has not done so in relator's case.
 {¶ 14} In Layne, supra, the Supreme Court of Ohio recognized that OAPA had adopted new parole guidelines on March 1, 1998. According to the Layne court:
The APA's new guidelines set forth a "parole guidelines chart" to determine the range of time that a prisoner should serve before being released. When considering inmates for parole the APA relies on a combination of two factors: the seriousness of an offender's criminal offense and the offender's risk of recidivism. To use the guidelines chart, each inmate is assigned two numbers that correspond to the above factors, an offense category score and a criminal history/risk score. The assigned numbers are then located on the guidelines chart, which is a grid with the offense category scores along the vertical axis and the criminal history/risk scores along the horizontal axis. At each intersection of the two scores there is an "applicable guideline range," indicating the range of months an inmate must serve before being released. During an inmate's first hearing under the new guidelines, the Parole Board generally gives an inmate a "projected release date," which presumably falls within the applicable guideline range. The projected release date is the date that the inmate is eligible for release, either on parole or on expiration of sentence.
Offense categories, at least in the form under consideration in these actions, were not in existence before the revised guidelines were introduced. The APA guidelines assign each type of criminal offense under Ohio law to an offense category. The guidelines contain 13 offense categories. The least serious criminal offenses are placed in category one. The more serious violations are placed in progressively higher numbered categories with the most serious in category 13. In determining an inmate's offense category score, the APA begins "by considering the conduct and circumstances established by the offense of which the defendant was convicted (offense of conviction)." However, the APA's revised guidelines permit the Parole Board to look beyond the offense of conviction to the circumstances surrounding the offense and assign an offense category score higher or lower than that applicable to the offense of conviction.
Id. at ¶ 2-3. (Fn. omitted.)
 {¶ 15} In Layne, supra, the Supreme Court of Ohio decided three cases involving inmates Wiley Layne, Gerald Houston, and Howard Lee. The Layne court states:
In each of the cases before us, the APA assigned the inmate an offense category score, not on the basis of the offenses of conviction, but, rather, on alleged criminal activity. Specifically, at Layne's parole hearing, the APA assigned Layne an offense category score for kidnapping despite the fact that the offense of kidnapping, while charged in the original indictment, was subsequently dropped by the prosecutor in exchange for Layne's plea. In Houston's case, the APA placed him in a higher offense category based in part on its conclusion that Houston had committed an attempted rape. Houston was neither charged with nor convicted of attempted rape. Finally, Lee was given the highest offense category score by the APA, 13, for allegedly committing an aggravated murder even though he was convicted of involuntary manslaughter. The result in each case was that substantially more time was required to be served before the inmate could be considered for release on parole than would have been required had each inmate been assigned scores according to their offenses of conviction. Moreover, in the cases of Layne and Lee, the APA's offense category score resulted in projected release dates that extended beyond the expiration of their maximum sentences.
In Randolph v. Adult Parole Auth. (Jan. 21, 2000), Miami App. No. 99-CA-17, * * * the Second District Court of Appeals determined that, as an agency of the state, the APA was bound by the state's plea agreement with a criminal defendant. Accordingly, the court in Randolph determined that the APA must begin its decision-making process concerning parole eligibility by assigning an inmate the offense category score that corresponds to the actual offense of which the inmate was convicted. The court of appeals noted, however, that the APA retained its discretion to determine that an inmate should serve his or her maximum sentence, and in making that determination could consider relevant facts and circumstances, including the offense or offenses set out in the indictment, as well as any circumstances surrounding the offense. We agree with the reasoning set forth in Randolph.
At the time that each plea agreement under review here was entered into, R.C. 2967.13(A) provided that a prisoner serving a sentence of imprisonment for a felony for which an indefinite term of imprisonment is imposed "becomes eligible for parole at the expiration of his minimum term." Am. Sub. S.B. No. 1, 139 Ohio Laws, Part I, 1, 25; Am. Sub. H.B. No. 708, 142 Ohio Laws, Part III, 4853, 5010.
We agree with the statement of the Montgomery County Court of Appeals in Lee [Lee v. Adult Parole Auth. (Apr. 7, 2000), Montgomery App. No. 17976] that the words "eligible for parole" in former R.C. 2967.13(A) ought to mean something. Inherent in this statutory language is the expectation that a criminal offender will receive meaningful consideration for parole. In our view, meaningful consideration for parole consists of more than a parole hearing in which an inmate's offense of conviction is disregarded and parole eligibility is judged largely, if not entirely, on an offense category score that does not correspond to the offense or offenses of conviction set forth in the plea agreement. Under the practice sanctioned here by the APA's revised guidelines, the language of former R.C. 2967.13 that an inmate "becomes eligible for parole at the expiration of his minimum term" is rendered meaningless.
We recognize that the APA has wide-ranging discretion in parole matters. State ex rel. Lipschutz v. Shoemaker (1990),49 Ohio St.3d 88, 90 * * *. R.C. 2967.03 vests discretion in the APA to "grant a parole to any prisoner for whom parole is authorized, if in its judgment there is reasonable ground to believe that * * * paroling the prisoner would further the interests of justice and be consistent with the welfare and security of society." However, that discretion must yield when it runs afoul of statutorily based parole eligibility standards and judicially sanctioned plea agreements. Therefore, we hold that in any parole determination involving indeterminate sentencing, the APA must assign an inmate the offense category score that corresponds to the offense or offenses of conviction. We further emphasize, as did the court of appeals in Randolph, that the APA, when considering an inmate for parole, still retains its discretion to consider any circumstances relating to the offense or offenses of conviction, including crimes that did not result in conviction, as well as any other factors the APA deems relevant. Hemphill v. Ohio AdultParole Auth. (1991), 61 Ohio St.3d 385, 386 * * *. See, also, Ohio Adm. Code 5120:11-07.
Id. at ¶ 24-28. (Fns. omitted.)
 {¶ 16} Here, unlike the scenarios in Layne, relator does not actually claim that OAPA assigned him to an incorrect offense category. What relator claims is that OAPA decided to override the guideline range for his TPV status based upon the reasons set forth in COBR's April 12, 2005 decision. Clearly, the Layne
case does not compel the result that relator seeks in this action.
 {¶ 17} As OAPA here argues, relator has failed to show that OAPA abused its discretion or failed to perform a clear legal duty owed to relator.
 {¶ 18} Relator has no constitutional, statutory, or inherent right to parole. State ex rel. Miller v. Leonard (2000),88 Ohio St.3d 46; State ex rel. Hattie v. Goldhardt (1994),69 Ohio St.3d 123, 125. Moreover, a prisoner has no constitutional or inherent right to be released from prison before the expiration of a valid sentence. Greenholtz v. Inmates ofNebraska Penal and Correctional Complex (1979), 442 U.S. 1, 7,99 S.Ct. 2100; Hattie, supra.
 {¶ 19} The decision whether and when to grant parole lies within the absolute discretion of OAPA. R.C. 2967.03; Woods v.Telb (2000), 89 Ohio St.3d 504, 512; State ex rel. Ferguson v.Ohio Adult Parole Auth. (1989), 45 Ohio St.3d 355; State exrel. Blake v. Shoemaker (1983), 4 Ohio St.3d 42, 43.
 {¶ 20} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.