[Cite as *State ex rel. Bailey v. Ohio Parole Bd.*, 2016-Ohio-8264.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Michael K. Bailey et al., | : | |
| | : | |
| Relators, | : | No. 15AP-887 |
| | : | |
| v. | : | |
| | : | (REGULAR CALENDAR) |
| Ohio Parole Board, | : | |
| | : | |
| Respondent. | : | |
| | : | |

D E C I S I O N

Rendered on December 20, 2016

**On brief:** *Michael K. Bailey, Steven M. Schmitz, William E. Morehouse, Benjamin D. Hudach,* and *Jeffrey S. Holland,* pro se.

**On brief:** *Michael DeWine*, Attorney General, and *Zachary R. Huffman,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relators Michael K. Bailey, Steven M. Schmitz, William E. Morehouse, Benjamin D. Hudach, and Jeffrey S. Holland, all inmates, have filed an original action requesting this court to issue a writ of mandamus ordering respondent, Ohio Parole Board, to conduct new parole hearings as to each of the relators on grounds that all previous parole hearings have been meaningless.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court. On October 29, 2015, respondent filed a motion to dismiss relators' action for failure to state a claim upon

which relief in mandamus could be granted. On November 17, 2015, relators filed a response to the motion to dismiss.

{¶ 3} The magistrate issued the appended decision, including findings of fact and conclusions of law, recommending that this court dismiss the action for failure to state a claim upon which relief in mandamus can be granted. Relators have filed pro se objections to the magistrate's decision, arguing that (1) the magistrate's "statement of the Legal Standards for reviewing a Petition for Writ of Mandamus are incomplete," (2) the Findings of Fact "do not accurately assess the case," (3) the "Conclusion[s] of Law is inaccurate," and (4) the decision is "nonresponsive to every legal claim raised."

{¶ 4} Relators, five inmates, filed this petition in mandamus alleging that respondent had adopted an "unwritten policy not to parole old law offenders anymore." (Petition at ¶ 22.) In support, relators alleged that several former or current employees of the Ohio Department of Rehabilitation and Correction ("ODRC") had made public statements indicating that parole hearings have become meaningless for those inmates still serving indeterminate sentences (i.e., inmates sentenced prior to the passage of Am.Sub.S.B. No. 2 in 1996). More specifically, relators alleged that ODRC employees had made statements, published in newspaper articles in 2012 and 2013, reflecting a sentiment that "most" inmates suitable for parole had already been released, and that "hardly any" of the remaining inmates will be deemed suitable for parole due to the "serious nature of their offense[s]." (Petition at ¶ 10, 16.)

{¶ 5} The magistrate, in addressing the allegations in the petition, concluded that, even if relators could prove that three employees or former employees of ODRC made the alleged statements, relators could not show that parole hearings have become meaningless specifically as to each relator, or that the parole board does not intend to give meaningful consideration of parole. The magistrate further determined that allegations as to prior denials of parole do not equate to a failure to give meaningful consideration of parole.

{¶ 6} In order to be entitled to relief in mandamus, a relator must demonstrate that: "(1) the relator has a clear legal right to the requested relief; (2) the respondent is under a clear legal duty to perform the requested act; and (3) the relator has no plain and adequate remedy in the ordinary course of law." *State ex rel. Kingsley v. State Emp.*

*Relations Bd.,* 10th Dist. No. 09AP-1085, 2011-Ohio-428, ¶ 3.  In order to survive a Civ.R. 12(B)(6) motion to dismiss, a "petitioner must state his claim with sufficient particularity to show that petitioner might prove some set of facts entitling him to relief." *State ex rel. Smith v. Martin,* 7th Dist. No. 04 CA 809, 2004-Ohio-6039, ¶ 5.

{¶ 7}   In general, the Ohio Adult Parole Authority "has wide-ranging discretion in parole matters." *Festi v. Ohio Adult Parole Auth.,* 10th Dist. No. 04AP-1372, 2005-Ohio-3622, ¶ 14.  Under Ohio law, "an inmate has no constitutional or statutory right to parole," nor does an inmate have a right to "earlier consideration for parole." *Id.* at ¶ 15.  *See also State ex rel. Miller v. Leonard,* 88 Ohio St.3d 46, 47 (2000) (an Ohio inmate has no "constitutional or inherent right to be released before the expiration of a valid sentence").

{¶ 8}   As noted, relators' petition alleges that respondent has an unwritten policy of denying parole to "old law offenders"; relators further allege that respondent places undue emphasis on the serious nature of an inmate's crime in making its parole determinations.

{¶ 9}   On review, we agree with the magistrate that the petition fails to set forth facts sufficient to warrant relief in mandamus.  While relators infer the existence of an unwritten policy by respondent of denying parole to serious offenders based on alleged statements by employees or former employees of ODRC purportedly appearing in newspaper articles in 2012 and 2013, it cannot be inferred from the facts alleged that respondent is failing to consider the statutory factors when making parole determinations.  Rather, as found by the magistrate, accepting as true the statements attributed to employees or former employees of respondent, i.e., that all inmates "likely" to be paroled have already been released, or that "most" of the inmates suitable for parole have already been released, relators' allegations are insufficient to establish an unwritten policy of respondent to automatically deny meaningful consideration for release on parole (or that the individual inmates were denied parole based on such a policy).  While the statements at issue may support an inference that respondent, in exercising its discretion, places emphasis on the serious nature of the crime, the allegations do not support a reasonable inference (or lead to the conclusion) that respondent has implemented a no-parole policy.

{¶ 10} We further note that the petition does not allege that respondent's consideration of the serious nature of the prisoner's crime is prohibited under the applicable statutes and regulations.  In this respect, Ohio Adm.Code 5120:1-1-07(A)(2) provides in part that, among other factors, the parole authority may determine that an inmate should not be released if "[t]here is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety."  *See also Swihart v. Chairman/Chairperson of the Ohio Adult Parole Auth.,* 10th Dist. No. 13AP-993, 2014-Ohio-3305, ¶ 23 (noting that Ohio Adm.Code 5120:1-1-07(A)(2) "expressly provides that parole authorities may rely upon the serious nature of the offense to determine whether the inmate would create a risk to public safety").

{¶ 11} Following an independent review, we find that the magistrate has properly determined the facts and applied the appropriate law.  Accordingly, relators' objections are overruled, and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  In accordance with the magistrate's recommendation, we grant respondent's motion to dismiss, and relators' action in mandamus is dismissed.

*Objections overruled; motion to dismiss granted;*
*action dismissed.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Michael K. Bailey, et al. | : | |
| Relators, | : | |
| v. | : | No. 15AP-887 |
| Ohio Parole Board, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

---

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on February 26, 2016

---

*Michael K. Bailey, Steven M. Schmitz, William E. Morehouse, Benjamin D. Hudach,* **and** *Jeffrey S. Holland,* **all pro se.**

*Michael DeWine,* **Attorney General,** *Caitlyn A. Nestleroth* **and** *Zachary R. Huffman,* **for respondent.**

---

### IN MANDAMUS
### ON RESPONDENT'S MOTION TO DISMISS

{¶ 12} This original action is brought by five inmates of Ohio's correctional system. Michael K. Bailey ("Bailey"), Steven M. Schmitz ("Schmitz"), and William E. Morehouse ("Morehouse") are confined at the Marion Correctional Camp. Benjamin D. Hudach ("Hudach") is confined at the Marion Correctional Institution. Jeffrey S. Holland ("Holland") is confined at the Marion Reintegration Center.

{¶ 13} This action is brought against respondent, Ohio Parole Board. Andre Imbrogno is alleged to be the acting chair of the Ohio Parole Board.

{¶ 14} In this original action, relators request a writ of mandamus ordering respondent to conduct new parole hearings as to each of the relators on grounds that allegedly all previous parole hearings have been meaningless.

Findings of Fact:

{¶ 15} 1.  The complaint runs 49 pages and contains 92 enumerated paragraphs.

{¶ 16} 2.  Paragraphs 2 through 8 of the complaint fall under the heading "Parties."

{¶ 17} 3.  Paragraphs 9 through 25 of the complaint fall under the heading "Facts."

{¶ 18} 4. Paragraphs 26 through 39 of the complaint fall under the heading "Parole Board Experience Regarding Bailey."

{¶ 19} 5. Paragraphs 40 through 44 of the complaint fall under the heading "Parole Board Experience Regarding Schmitz."

{¶ 20} 6. Paragraphs 45 through 50 of the complaint fall under the heading "Parole Board Experience Regarding Morehouse."

{¶ 21} 7.  Paragraphs 51 through 55 of the complaint fall under the heading "Parole Board Experience Regarding Hudach."

{¶ 22} 8. Paragraphs 56 through 61 of the complaint fall under the heading "Parole Board Experience Regarding Holland."

{¶ 23} 9. Paragraphs 62 through 70 of the complaint fall under the heading "Summation of Relators [sic] OPB Experience."

{¶ 24} 10. Paragraphs 71 through 78 of the complaint fall under the heading "Fiscal Waste Analysis."

{¶ 25} 11.  Paragraphs 79 through 91 of the complaint fall under the heading "Legal Claims."

{¶ 26} 12.  Paragraph 92 is captioned "Relief."

{¶ 27} 13.  According to paragraph 9 of the complaint, on April 16, 2012 an article was published in the Lancaster Gazette wherein, JoEllen Smith, an alleged spokesperson for respondent, is quoted as saying "after 16 years all the inmates likely to be paroled have been released already, leaving behind 3,200 of the State's worst inmates to cycle through the process again and again."  The relators do not attach a copy the alleged article to their complaint.

{¶ 28} 14.  According to paragraph 10 of the complaint, on April 30, 2013, an article was published in the Columbus Dispatch wherein then Parole Board Chair Cynthia Mausser was quoted as saying:  "Because we're 16 years from Senate Bill 2 most of the

people suitable for parole have already been released."  The relators do not attach a copy of the alleged article to their complaint.

{¶ 29} 15. According to paragraph 11 of the complaint, on May 18, 2012, the Director of the Ohio Department of Rehabilitation and Correction ("ODRC") "wrote an open letter addressing the quotes from these two articles."

{¶ 30} 16.  According to paragraph 11 of the complaint, the relators allege:

> After this open letter from the Director was circulated the OPB stopped discussing their policy of no longer paroling the remaining offenders under their control. While the OPB stopped talking about it to the news media, they continued to do what they said they were doing in the articles.

{¶ 31} 17.  According to paragraph 12 of the complaint, in July 2012, Bailey "wrote an essay in rebuttal to the aforementioned articles."

{¶ 32} 18.  According to paragraph 13 of the complaint, the relators allege:

> The two newspaper articles, open letter from the ODRC Director, and BAILEY's essay clearly show the OPB had a specific intent by April 2012 to keep as many prisoners under their control by repeatedly denying parole again and again; that their publicly announced justification was actually a lie.

(Emphasis sic.)

{¶ 33} 19. According to paragraph 14 of the complaint, in July 2014, ("Public Broadcast System" or "PBS") "aired a 4-part series on mass incarceration."  Allegedly, then Parole Board Chair Cynthia Mausser was a guest of the series on July 10, 2014 and then parole board member Kathleen Kovach was a guest on July 24, 2014.  According to the complaint, "[b]oth made comments during that show which indicated they still possessed the mind-set disclosed to the public in April 2012."

{¶ 34} 20. According to paragraph 15 of the complaint, Bailey wrote an essay on mass incarceration and he allegedly circulated it to "all Ohio Legislators, State Office holders and various news media outlets."

{¶ 35} 21. According to paragraph 16 of the complaint, "the Governor's Office" received a copy of Bailey's essay and forwarded it to PBS for a response.  Allegedly, Imbrogno wrote a response and forwarded it to Bailey on October 30, 2014.  Allegedly, in his response, Imbrogno made statements that "reflect the same mind-set held by" Mausser, Kovach, and Smith.

{¶ 36} 22. According to paragraph 24 of the complaint, ODRC Staff Attorney Ryan G. Dolan wrote a letter in preparation for an April 6, 2015 hearing before "JCARR." Allegedly, Dolan wrote:  "parole decisions hinge largely, although not entirely, on the 'nature of the crime.' That is why most old law inmates have little chance of being paroled."

{¶ 37} 23. According to paragraph 39 of the complaint:

> Despite all these rehabilitative accomplishments, in addition to exemplary institutional conduct, the OPB considered BAILEY unsuitable for parole at his seventh hearing because of the premeditated nature of the murder he committed 40 years ago; yet in the past, offenders with similar (if not worse) crimes have been paroled without serving nearly as much time, earning nearly as much rehabilitative achievement, or conducting themselves nearly as well. Taken alone, this means relatively little; but when combined with those two articles from April 2012 previously cited herein, IMBROGNO's letter of 10-30-14, Ryan G. Dolan's letter of April 2015 to the executive director of JCARR, along with comments made by KOVACH and Cynthia Mausser on the PBS Show in July 2014; it clearly demonstrates the OPB has an unwritten (unchallengeable?) policy in place to deny meaningful review to BAILEY specifically, and all others similarly situated.

(Emphasis sic.)

{¶ 38} 24. According to paragraph 44 of the complaint:

> When SCHMITZ went before the OPB for the fifth time and received his fifth consecutive 3 year continuance he was a non-violent first time offender who had been living in a minimum security Reintegration Center for months, with all the program completions expected of him (and more), who had tremendous community support and exceptional institutional conduct. Nothing he had accomplished during his previous 19 years of incarceration could change the "fact" that the decision was made prior to April 2012 to keep him incarcerated. That "fact" is undeniable, as revealed by the OPB in their news media releases in April 2012 and subsequent communications in 2014 on the show "All Sides w/Ann Fisher," the letter from IMBROGNO dated 10-30-14, and the letter from ODRC Staff Attorney, Ryan Dolan, to the Executive Director of JCARR.

(Emphasis sic.)

{¶ 39} 25. According to paragraph 50 of the complaint:

> The review process [Morehouse] receives now at parole hearings is meaningless, as the decision not to release him was made prior to April 2012 (as proclaimed to the world in news releases herein aforesaid) and then reiterated by IMBROGNO in his letter of 10-30-14 and Staff Counsel Ryan Dolan's letter to JCARR's executive director in April 2015. The OPB has embarked on this policy despite the fact it costs Ohio taxpayers more than $119 million each year to incarcerate rehabilitated offenders like MOREHOUSE who has served well beyond the amount of time similar offenders have for similar offenses. This is a waste of taxpayer revenue and an injustice to every rehabilitated offender still under their control.

(Emphasis sic.)

{¶ 40} 26. According to paragraph 55 of the complaint:

> None of HUDACH's accomplishments over the past 20 years could change the decision to continue his incarceration that was announced to the public three years before he actually had a hearing. Nothing he could ever accomplish in the next five years will have an impact on future decisions either. The OPB's public policy is to not release him, or the overwhelming majority of other prisoners that the OPB still has control over. The OPB is not concerned with the cost of that policy to taxpayers or how many other laws they violate to implement it. They have complete discretion in the release making decision and they believe this gives them immunity to violate whatever other law exists that may impact that discretion. This is not "fair" to any citizen who pays taxes and is expected to abide by the laws they don't necessarily agree with.

{¶ 41} 27. According to paragraph 61 of the complaint: "[Holland's] fourth parole hearing is currently scheduled for March 2018; however, history does not show he will receive any more meaningful reviews. More than likely he will not be paroled again.

{¶ 42} 28. At paragraph 92 of the complaint, relators set forth the relief requested:

> WHEREFORE, Relators pray for a peremptory Writ of Mandamus compelling Respondent to comply with all Ohio laws now being violated and conduct new parole hearings on every offender currently incarcerated who has had a meaningless parole hearing, which is identified as any parole hearing held after January 1, 2010, consistent with these laws. FURTHER, Relators pray this Court find all members

> of the OPB in violation of ORC §124.34(A) and direct ODRC Director, Gary Mohr to take appropriate administrative action against each of them; find the OPB guilty of public corruption and ORDER whatever is appropriate under the circumstances; FINALLY, issue any further relief deemed appropriate.

(Emphasis sic.)

{¶ 43} 29. On October 29, 2015, respondent moved to dismiss this action.

{¶ 44} 30. On November 17, 2015, relators filed their response to respondent's motion to dismiss.

Conclusions of Law:

{¶ 45} It is the magistrate's decision that this court grant respondent's motion to dismiss.

{¶ 46} A Civ.R. 12(B)(6) motion to dismiss tests the sufficiency of a complaint. *State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.,* 72 Ohio St.3d 94, 95 (1995), citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545 (1992).

{¶ 47} In reviewing the complaint, the court must take all of the material allegations as admitted and construe all reasonable inferences in favor of the non-moving party. *Id.*

{¶ 48} " ' A complaint in mandamus states a claim if it alleges the existence of the legal duty and the want of an adequate remedy at law with sufficient particularity so that the respondent is given reasonable notice of the claim asserted.' " *Hanson* at 548, quoting *State ex rel. Alford v. Willoughby,* 58 Ohio St.2d 221, 223-24 (1979).

{¶ 49} "In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R. 12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union*, 42 Ohio St.2d 242 (1975), syllabus.

{¶ 50} In their response to respondent's motion to dismiss, relators rely upon *State ex rel. Keith v. Ohio Adult Parole Auth.,* 141 Ohio St.3d 375, 2014-Ohio-4270. (See Relator's Response, 9-10, 23-24.) Thus, a careful review of the *Keith* case is in order.

{¶ 51} As an inmate of Ohio's correctional system, Bernard R. Keith was scheduled for a parole release hearing in February 2012. At a February 17, 2012 hearing, the parole

board denied parole and set the next parole hearing for 62 months later. In explaining its rationale, the board cited several factors and stated that Keith had been paroled 8 times.

{¶ 52} Keith then sent a letter to Parole Board Chair Cynthia Mausser. Keith requested that the decision be corrected to reflect the correct number of times he had been paroled and that the parole board grant him a new hearing. The parole board denied Keith's request.

{¶ 53} In May 2012, Keith filed in this court a mandamus action requesting that the Ohio Adult Parole Authority ("OAPA") be compelled to correct the record and to provide Keith with a rehearing.

{¶ 54} OAPA filed a motion to dismiss. Keith responded with a memorandum and a motion for summary judgment, to which two affidavits and several exhibits were appended. Keith then moved to supplement the pleadings with another affidavit and more exhibits, raising additional claims of further error in his records.

{¶ 55} The OAPA responded with an affidavit by Mausser, in which she asserted that Keith's record had been corrected to reflect the correct number of times he had been paroled. Mausser further asserted that, after the correction was made, she had submitted the matter to the parole board to consider the correction. The board voted not to modify its previous decision and not to grant Keith a new hearing.

{¶ 56} A magistrate of this court granted Keith's motion to supplement the pleadings. The magistrate also converted OAPA's motion to dismiss into one for summary judgment and gave notice that both motions for summary judgment were set for a non-oral hearing on August 2, 2012.

{¶ 57} The magistrate recommended that this court grant OAPA's motion for summary judgment and deny Keith's motion for summary judgment. The magistrate found that Keith had no constitutional, statutory or inherent right to parole, and no due process right to the correction of errors that appear in records used by the OAPA in parole determinations. The magistrate further found that, even if Keith had a right to the correction of an error, his request was moot, as the OAPA records had been corrected to reflect that Keith had been paroled six times.

{¶ 58} This court overruled Keith's objections based on its findings that Mausser's affidavit established that the parole information had been corrected, that the parole board had seen the corrected information, and that the board had voted not to modify its previous decision or grant Keith a rehearing.

{¶ 59} In *Keith,* this court concluded that the case was moot.

{¶ 60} Keith appealed as of right to the Supreme Court of Ohio.

{¶ 61} In his first proposition of law, Keith asserted that this court had failed to consider all his claims as presented. The Supreme Court agreed. Because Keith was allowed to supplement the complaint, the Supreme Court concluded that Keith's assertions of additional errors in his parole records should have been considered by this court.

{¶ 62} Citing *Layne v. Ohio Adult Parole Auth.,* 97 Ohio St.3d 456, 2002-Ohio-6719, the Supreme Court, in *Keith,* asserted that *Layne* establishes a minimal standard for the OAPA, that is, the statutory language "ought to mean something." *Keith* at ¶ 21 quoting *Layne* at ¶ 27. At issue in *Layne,* were the words "eligible for parole" in former R.C. 2967.13(A). *Id.* As the *Keith* court observed, in *Layne,* the court held that "inherent in the language is 'the expectation that a criminal offender will receive meaningful consideration.' " *Id.*

{¶ 63} Citing Ohio Adm.Code 5120:1-1-07(B), the Supreme Court, in *Keith,* set forth the factors the parole board is to consider. The *Keith* court then states:

> Inherent in the language of Ohio Adm.Code 5120:1-1-07(B) is that the board must consider various reports and "other relevant written information" pertaining to the inmate whose parole is being considered. The existence of this formal process for considering parole rightly gives parolees some expectation that they are to be judged on their own substantively correct reports. Requiring the board to consider specific factors to determine the parolee's fitness for release would not mean anything if the board is permitted to rely on incorrect, and therefore irrelevant, information about a particular candidate.
>
> Our decision today does not overrule the holding in [*State ex rel. Henderson v. Ohio Dept. of Rehab. & Corr.,* 81 Ohio St.3d 267 (1998)], and similar cases. Keith and other prisoners still have "no constitutional or statutory right to parole." *Id.* at 268. See also *State ex rel. Seikbert v. Wilkinson,* 69 Ohio St.3d 489, 490, 1994 Ohio 39, 633 N.E.2d 1128 (1994). A state may set up a parole system, but it has no duty to do so. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Having established a parole system, the state may design that system to be entirely discretionary, and the state "may be specific or general in defining the conditions for release and the factors that should be

considered by the parole authority." *Id.* at **8**. Moreover, there need be no "prescribed or defined combination of facts which, if shown, would mandate release on parole." *Id.* As mentioned above, Ohio's system is entirely discretionary and creates no expectation of parole and no due-process right to parole itself.

However, having set up the system and defined at least some of the factors to be considered in the parole decision, the state has created a minimal due-process expectation that the factors considered at a parole hearing are to be as described in the statute or rule and are to actually and accurately pertain to the prisoner whose parole is being considered.

* * *

But where there are credible allegations, supported by evidence, that the materials relied on at a parole hearing were substantively inaccurate, the OAPA has an obligation to investigate and correct any significant errors in the record of the prisoner.

* * *

Thus, Keith has made a showing that there may be substantive errors in his record that may influence the OAPA's consideration of his parole. There is no evidence on the record that any error beyond the number of times Keith was paroled has been corrected. OAPA must therefore conduct an investigation into Keith's allegations and correct any substantive errors discovered in the record it uses to consider him for parole.

*Id.* at ¶ 23-25, 28, and 30.

{¶ 64} Given its analysis, the Supreme Court, in *Keith,* reversed the judgment of this court and granted a writ of mandamus ordering the OAPA to investigate Keith's allegations and correct any substantive errors in the record used to consider him for parole.

{¶ 65} Unlike *Keith,* the instant case does not involve the allegation that the parole board used records containing incorrect information in determining whether to grant or deny parole.

{¶ 66} Unlike *Layne,* the instant case does not involve the parole board's improper use of a "parole guidelines chart" on which the board had placed the inmate in an offense category that did not correspond to his offense of conviction. *Layne* at ¶ 2. Rather, the

instant case involves allegations that JoEllen Smith, Cynthia Mausser, and Kathleen Kovach made public statements on behalf of respondent that allegedly indicate that parole hearings have become meaningless for those who are still serving indeterminate sentences.

{¶ 67} Even if relator's could prove that the three employees or former employees of ODRC made the statements as alleged in the complaint, that would not prove that parole hearings have become meaningless specifically as to each relator or that the parole board does not intend to give meaningful consideration of parole. Moreover, prior denials of parole do not equate to a failure to give meaningful consideration of parole.

{¶ 68} Thus, based upon the above analysis, it is clear beyond doubt that relators can prove no set of facts entitling them to relief in mandamus. *O'Brien.*

{¶ 69} Accordingly, it is the magistrate's decision that this court dismiss this action for the failure to state a claim upon which relief in mandamus can be granted.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).