[Cite as *State ex rel. Keith v. Ohio Dept. of Rehab & Corr.*, 2017-Ohio-4406.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Bernard R. Keith, | : | |
| Relator, | : | |
| v. | : | No. 15AP-1080 |
| Ohio Department of Rehabilitation and Correction et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on June 20, 2017

**On Brief:** *Bernard R. Keith,* pro se.

**On Brief:** *Michael DeWine,* Attorney General, and *George Horvath,* for respondents.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, P.J.

{¶ 1} Bernard R. Keith filed this action in mandamus seeking a writ to compel various state entities to review a March 12, 2015 denial of parole for him and to force them to immediately conduct another parole hearing.

{¶ 2} In accord with Loc.R. 13 of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings. The magistrate reviewed the matter, including a decision of the Supreme Court of Ohio in *State ex rel. Keith v. Adult Parole Auth.*, 141 Ohio St.3d 375, 2014-Ohio-4270. The magistrate also had the benefit of briefs filed by the parties.

{¶ 3} On February 17, 2017, the magistrate issued a magistrate's decision which is appended hereto.

{¶ 4} The magistrate has recommended that we find that the various respondents have complied with a writ of mandamus issued previously in the course of this litigation (first issue).

{¶ 5} Addressing the second issue, the magistrate indicated that we should find that Keith's completion of a program entitled "Criminal and Addictive Thinking" had been appropriately considered.

{¶ 6} As to the third issue, the magistrate indicates that Ohio Adm.Code 5120:1-07(C) supports the way in which the parole board's form was completed in Keith's case.

{¶ 7} As to the fourth issue, the magistrate indicates that the records regarding Keith getting his G.E.D. certificate were not harmful.

{¶ 8} In summary, the magistrate's decision did not recommend that we grant Keith another writ of mandamus.

{¶ 9} Keith has filed objections to the magistrate's decision. The office of the Attorney General has filed a memorandum in response. The case is now before the court for a full, independent review.

{¶ 10} Keith's objections run some 30 pages. It includes an argument that additional evidence has surfaced since the magistrate issued his magistrate's decision and that the additional evidence demonstrates noncompliance with the original writ of mandamus. We have reviewed the additional evidence and do not find a failure of the state entities to abide by the earlier writ.

{¶ 11} Turning to the objections, there is simply no proof that parole for Keith was not given meaningful consideration. Keith has failed to complete parole on numerous occasions which presents a challenge for him. The fact that parole has been denied recently does not mean it was not considered meaningfully.

{¶ 12} Further, Keith faces the challenge of trying to address the mental state of the members of the state entities involved in parole considerations. He cannot do anything but speculate as to the mental state and we cannot grant a writ of mandamus based on his speculation.

{¶ 13} Keith also seems to be asserting that the state entities have to list in writing all the evidence they considered and all the issues considered or a court should infer that the evidence and issues were not considered. Such listing of all issues considered is not required by the Ohio Administrative Code. If there are assumptions to be made, the assumptions are that the governmental entities knew what was expected of them and did what was required.

{¶ 14} We have considered all the documents submitted by Keith, with or without notary seals. We find in them no basis for issuing a writ to compel the state entities to conduct a new parole hearing, although we note that Keith was apparently scheduled for a parole hearing on April 2, 2017. We have no evidence regarding that hearing or the result of that hearing.

{¶ 15} We overrule the objections to the magistrate's decision and adopt the findings of fact and conclusions of law contained therein. As a result, we deny the request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

SADLER and BRUNNER, JJ., concur.

_____

# A P P E N D I X

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Bernard R. Keith, | : | |
| Relator, | : | |
| v. | : | No. 15AP-1080 |
| Ohio Department of Rehabilitation and Correction, et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on February 17, 2017

---

*Bernard R. Keith*, pro se.

*Michael DeWine,* Attorney General, and *William D. Maynard,* for respondents.

---

IN MANDAMUS

{¶ 16} In this original action, relator, Bernard R. Keith, an inmate of the Pickaway Correctional Institution ("PCI"), requests a writ of mandamus ordering respondents, the Director of the Ohio Department of Rehabilitation and Correction ("ODRC"), the Ohio Adult Parole Authority ("OAPA"), and the Chair of the Ohio Parole Board, to vacate the March 12, 2015 decision of the Ohio Parole Board (Central Office Board Review) that denies relator parole and continues his next parole board hearing to April 1, 2017, and to immediately conduct another parole board hearing.

Findings of Fact:

{¶ 17} 1. A review of the decision of the Supreme Court of Ohio in *State ex rel. Keith v. Ohio Adult Parole Auth.,* 141 Ohio St.3d 375, 2014-Ohio-4270 ("*Keith II*"), will assist the determination of the instant action. In *Keith II*, the Supreme Court reversed the judgment of this court rendered in *State ex rel. Keith v. Ohio Adult Parole Auth.*, 10th Dist. No. 12AP-408, 2013-Ohio-2514 ("*Keith I*").

{¶ 18} In November 2011, Keith entered Lorain Correctional Institution to serve a six-month sentence. In December 2011, a hearing officer determined that Keith's previous parole should be revoked, and a parole release hearing was scheduled for February 2012. *Keith II* at ¶ 5.

{¶ 19} That hearing was held by video conference on February 17, 2012. The parole board denied parole and set the next parole hearing for 62 months later. In explaining its rationale, the board cited several factors and stated that Keith had been paroled eight times. *Keith II* at ¶ 6.

{¶ 20} Keith sent a letter to Cynthia Mausser, then the Chair of the Ohio Parole Board. In his letter, Keith requested that the decision be corrected to reflect the correct number of times he had been paroled and that the parole board grant him a new hearing. *Keith II* at ¶ 7. The board responded that Keith's request did not meet the standard for reconsideration of a board decision and that it would make no modification of the decision. *Id.*

{¶ 21} In May 2012, Keith filed an action in mandamus in this court requesting that the OAPA be compelled to correct the record and to provide Keith with a rehearing. *Keith II* at ¶ 8.

{¶ 22} The OAPA filed a motion to dismiss Keith's case, and Keith responded with a memorandum and a motion for summary judgment to which two affidavits and several exhibits were appended. Keith then moved to supplement the pleadings with another affidavit and more exhibits, raising additional claims of further errors in his records. *Keith II* at ¶ 9.

{¶ 23} The OAPA responded with an affidavit from Mausser in which she asserted that Keith's record had been corrected to reflect the correct number of times he had been

paroled. She further asserted that after the correction was made, she had submitted the matter to the parole board to consider the correction. The board voted not to modify its previous decision and not to grant Keith a new hearing. *Keith II* at ¶ 10.

{¶ 24} The magistrate appointed by this court granted Keith's motion to supplement the pleadings. The magistrate also converted OAPA's motion to dismiss into a motion for summary judgment and gave notice that both motions for summary judgment were set for a non-oral hearing on August 2, 2012. *Keith II* at ¶ 11.

{¶ 25} On the merits, the magistrate recommended that this court grant OAPA's motion for summary judgment and deny Keith's motion for summary judgment. The magistrate found that, even if Keith had the right to the correction of an error, his request was moot, as the OAPA records had been corrected to reflect that Keith had been paroled six times. *Keith II* at ¶ 12.

{¶ 26} Keith filed objections to the decision of the magistrate. This court overruled the objections finding that, based on Mausser's affidavit, the board had performed the acts sought in Keith's request for relief, and that the magistrate was correct in declaring the case moot. *Keith II* at ¶ 13.

{¶ 27} Keith appealed as of right the decision of this court to the Supreme Court of Ohio. *Keith II* at ¶ 14.

{¶ 28} On appeal to the Supreme Court, Keith asserted five propositions of law. In his first proposition of law, Keith asserted that this court failed to consider all his claims. The Supreme Court found that Keith is correct. "Because Keith was allowed to supplement the complaint, Keith's assertions of additional errors in his parole records are at issue and should have been considered by the court of appeals." *Keith II* at ¶ 17.

{¶ 29} In granting the writ and reversing the judgment of this court, the Supreme Court in *Keith II* explains:

> We recognize that the OAPA's discretion in parole matters is wide-ranging. [*Layne v. Ohio Adult Parole Auth.,* 97 Ohio St.3d 456, 2002-Ohio-6719] ¶ 28, citing *State ex rel. Lipschutz v. Shoemaker*, 49 Ohio St.3d 88, 90, 551 N.E.2d 160 (1990). R.C. 2967.03 vests discretion in OAPA to "grant a parole to any prisoner for whom parole is authorized, if in its judgment there is reasonable ground to believe that * * * paroling the prisoner would further the interests of justice

and be consistent with the welfare and security of society." However, as in *Layne,* that discretion must yield to statutory or regulatory requirements. Therefore, we hold that in any parole determination involving indeterminate sentencing, the OAPA may not rely on information that it knows or has reason to know is inaccurate.

This is not to say that the OAPA must conduct an extensive investigation on the information it reviews for every prisoner to ensure accuracy, nor does it mean that the OAPA must credit every unsupported allegation by a prisoner that the information is inaccurate.

But where there are credible allegations, supported by evidence, that the materials relied on at a parole hearing were substantively inaccurate, the OAPA has an obligation to investigate and correct any significant errors in the record of the prisoner.

Here, Keith's assertions go beyond mere allegation. For example, he points out that a memorandum of August 12, 2010 from Ohio Department of Rehabilitation and Correction employee Lora Turjanica indicates that Keith had been continuously incarcerated from May 1991 until May 2000. This makes it impossible for him to have been permitted to "remain on supervision" in July 1992 despite a parole violation, as asserted in OAPA member Trayce Thalheimer's letter of June 5, 2012.

Thus, Keith has made a showing that there may be substantive errors in his record that may influence the OAPA's consideration of his parole. There is no evidence on the record that any error beyond the number of times Keith was paroled has been corrected. OAPA must therefore conduct an investigation into Keith's allegations and correct any substantive errors discovered in the record it uses to consider him for parole.

* * *

Conclusion

The OAPA has and retains wide-ranging discretion in parole matters. A prisoner lacks any constitutional or statutory right to parole. However, having established a parole system, and having put in place statutory and regulatory language

> requiring the OAPA to consider relevant information regarding a prisoner it is considering for parole, the state has created a minimal due-process expectation that the information will actually and accurately pertain to the prisoner whose parole is being considered. Therefore, where a credible allegation of substantive inaccuracies in a prisoner's record is made, the OAPA is obligated to correct those errors before considering the inmate for parole. We therefore reverse and grant a writ ordering appellees to investigate Keith's allegations and correct any substantive errors in the record used to consider him for parole.

*Keith II* at ¶ 26-30, 32.

{¶ 30} 2. On October 7, 2014, the Supreme Court filed its judgment entry in *Keith II.* The entry states:

> This cause, here on appeal from the Court of Appeals for Franklin County, was considered in the manner prescribed by law. On consideration thereof, the judgment of the court of appeals is reversed, and a writ of mandamus is granted ordering appellees to investigate Bernard Keith's allegations and correct any substantive errors in the record used to consider him for parole, consistent with the opinion rendered herein.
>
> It is further ordered that a mandate be sent to and filed with the clerk of the Court of Appeals for Franklin County.

{¶ 31} 3. On October 24, 2014, this court issued its judgment entry in case No. 12AP-408 in *Keith I.* This court's judgment entry states:

> Pursuant to the mandate of the Supreme Court of Ohio in case No. 2013-1064, decided October 7, 2014, reversing the judgment of this court, the journal entry of judgment journalized on June 26, 2013, is vacated and a writ of mandamus is granted ordering respondents to investigate Bernard Keith's allegations and correct any substantive errors in the record used to consider him for parole, consistent with the opinion of the Supreme Court.

{¶ 32} 4. On October 27, 2014, the Franklin County Clerk of Court issued a writ of mandamus.

{¶ 33} 5. Appended to Keith's complaint filed in this mandamus action is a copy of a two-page letter dated October 16, 2014 from Assistant Attorney General Gene D. Park to relator. Addressed to relator at PCI, Park's letter states:

> As you may have been aware, the Ohio Supreme Court issued a judgment in this case in your favor, reversing the decision of the Tenth District Court of Appeals. In their order, the Ohio Supreme Court stated the following:
>
> [W]here a credible allegation of substantive inaccuracies in a prisoner's record is made, the OAPA is obligated to correct those errors before considering the inmate for parole. We therefore reverse and grant a writ ordering appellees to investigate Keith's allegations and correct any substantive errors in the record used to consider him for parole.
>
> Pursuant to the Court's order, the Ohio Parole Board has examined your claims of error in the lower court record. Attached to this letter is the original decision sheet from your February 17, 2012 parole hearing, which stated that you were paroled eight times in the past. The Board has stamped that sheet as "void." The Board has elected to rehear your case, and plans to convene a new parole hearing as soon as practicable.
>
> I have examined your pleadings before the Tenth District. In a motion to supplement your complaint, which you filed in the Tenth District on July 5, 2012, you alleged several errors related to a letter Parole Board member Trayce Thalheimer wrote to you on June 5, 2012. The alleged errors were:
>
> 1) Relator is not housed at the London Correctional Institution.
>
> 2) Relator's parole consideration hearing was not held at the London Correctional Institution.
>
> 3) Relator has no recollection of ever had any discussion or conversation with Ms. Thalheimer. [sic]
>
> 4) Relator was incarcerated as a Technical Parole Violator from 6/24/91 until 5/1/2000 and did not appear at any hearing with a hearing officer.
>
> 5) Relator was not released at no hearing on 7/17/92.

(Motion, p. 3.)

The Parole Board reviewed these allegations. Attached to this letter is a letter from Parole Board Chair Cynthia Mausser. In this letter, in response to your first and second allegations, the Board acknowledges that you were not housed in the London Correctional Institution at the time of your hearing, and that you were actually incarcerated at the Richland Correctional Institution.

The Mausser letter also acknowledges in response to your fifth allegation that you were not paroled on "7/17/92," and this reference in the June 5, 2012 Thalheimer letter was made in error. The actual date of the violation hearing was on July 17, 2002.

In your third allegation, you state that you do not recall any discussion with Board Member Trayce Thalheimer. After looking into this claim, the Board found that Ms. Thalheimer was the primary board member for your hearing on February 17, 2012. That means that she would have prepared and led the conversation with you. Therefore, despite your lack of recollection, you had a conversation with Ms. Thalheimer during your February 17, 2012 hearing.

Regarding your fourth allegation, the Parole Board's records show that you were incarcerated from 1991 until 2000. However, you had the following release consideration hearings during that time: July 2, 1992; March 23, 1993; March 23, 1995; May 23, 1995; March 11, 1997; March 11, 1999; December 10, 1999.

The letter from Cynthia Mausser correcting the errors in the June 5, 2012 Thalheimer letter will also be a part of your parole record. The Ohio Parole Board has thus complied with the order of the Ohio Supreme Court in this matter. Contact me if you have any further questions.

{¶ 34} 6. Appended to Keith's complaint filed in this mandamus action is a copy of a one-page letter dated October 10, 2014 from Mausser to Keith. Addressed to relator at PCI, the letter states:

I have reviewed the above-referenced correspondence from Parole Board Member Thalheimer to you regarding your

February 17, 2012 parole release consideration hearing. In the correspondence, the issue regarding the number of times you were paroled was addressed. In a subsequent reply, you indicated that there were two additional errors in the letter. The alleged errors involved the institution at which you were incarcerated when your parole hearing was conducted, and the date of a previous violation hearing.

First, I have verified that you were incarcerated at the Richland Correctional Institution in 2012, and it was from that institution that your parole release consideration hearing was conducted on February 17, 2012, and not the London Correctional Institution as indicated in the letter from Parole Board Member Thalheimer. Second, I also verified that the reference to a violation hearing of "7/17/92" was also incorrect, and that the actual date of the violation hearing was July 17, 2002.

This letter will be placed in your file and will serve as a correction to the June 5, 2012 correspondence from Parole Board Member Thalheimer.

{¶ 35} 7. Appended to Keith's complaint filed in this mandamus action is a copy of a one-page memorandum dated November 6, 2014 from parole board Quality Assurance Officer Lindsay Dudas, stating:

On 2/17/2012, you had a Parole Board hearing. As a result of the hearing, the following action was taken: "Continued 4/1/2017 and Central Office Notify." This letter is to advise you that the action from that hearing has been rescinded. You will have a rehearing during the month of February 2015. The actual day of the hearing will be determined at a later date.

Any materials that you want to submit for the hearing should be submitted to your institution's Parole Board Parole Officer, who is Brenda Bonn.

{¶ 36} 8. On February 17, 2015, relator appeared before the parole board. The parole board did not render a decision regarding parole on that date. Rather, the parole board recommended Central Office Board Review ("COBR").

{¶ 37} 9. Following a March 12, 2015 hearing, COBR completed a parole board form captioned "Ohio Parole Board Decision and Minutes."

{¶ 38} Section 3(B) of the form requests that the board state its rationale for its decision.  The form asks for "specific factors relevant to the offense and offender."  In the space provided, the parole board explained:

> Offender Keith has served over 3 years on his current incarceration. He has been given multiple opportunities on parole supervision and has returned to prison multiple times for the commission of new crimes. The Central Office Board review has determined that release at this time would not further the interest of justice, that there is substantial reason to believe that Keith will engage in further criminal conduct, and that Keith will not conform with conditions of parole supervision.

{¶ 39} Section 4 of the form asks the parole board to indicate by its mark aside one or more of four pre-printed statements.  The parole board marked boxes A and B indicating the following:

> There is substantial reason to believe that the inmate will engage in further criminal conduct, or that the inmate will not conform to such conditions of release as may be established under AR 5120 1-1-12.
>
> There is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice or be consistent with the welfare and security of society.

{¶ 40} At section 6(A) of the form, the parole board states that, pursuant to "Central Office Board Review," the matter is "continued" to April 1, 2017.

{¶ 41} 10. Earlier, by letter dated February 19, 2015, relator wrote to respondent:

> During my hearing on the above referenced date, an issue was raised regarding the absence of a claimed program participation/completion for Criminal and Addictive Thinking. I subsequently raised that issue with my case manager, who had previously stated that this program participation and completion would be added to my ORAS (see: attached kite of 4/9/14 to case manager, Mr. Wachauf).
>
> I have been informed that participation/completion of the referenced program of Criminal and Addictive Thinking, is

> noted and listed as an "Unit Lead activity group," with a completion date of 12/13. (see: attached certificate of participation.)
>
> Perhaps this program had been overlooked as a result of my failure to mention that I have been housed in the Re-integration Unit for the past 16 months at my hearing of 2/17/15.
>
> Please make this letter and attached certificate a part of my file and available for review by COBR.

{¶ 42} Appended to the February 19, 2015 letter is a single-page document captioned "Certificate of Participation." The document certifies that relator participated in a program at PCI identified as "Criminal and Addictive Thinking."

{¶ 43} 11. By three-page letter dated March 20, 2015, relator requested reconsideration. The letter explains:

> This correspondence is being submitted as a formal request for reconsideration.
>
> This request is based on an additional program completion that was questioned during my re-hearing of 2/17/15, (see: attached certificate and letter to you of 2/19/15, that may have not been received) and the absence of what appears to be a meaningful consideration of:
>
> 1). The absence of any negative institution behavior/conduct.
>
> 2). Program completions - (i.e. Thinking for a Change and Criminal Addictive thinking).
>
> 3). Participation and residency in the Re-integration Unit since October 8, 2013.
>
> 4). The achieving and maintaining of level 1, security status since 2012.
>
> It is my hope and position that should the above listed rehabilitative actions on my part, been given meaningful consideration per the Ohio Parole Handbook of December 2013, pg. 3, line 3, which states:

"In keeping with it's [sic] statutory mission and the guidance of the courts, the parole board provides **meaningful consideration** (bolded for emphasis) for all inmates who are eligible for parole and on page 6, which states:

"An analysis of individual cases should include consideration of.....the offender's behavior in prison."

Then there should have been some deviation (however minimal) from the initial determination and continuance of my 2/17/12 hearing (see: attached VOID Parole Decision Sheet of 2/17/12), which pursuant to The Ohio Supreme Courts' Decision in State ex rel. Keith v. OAPA et al. 2014-Ohio-4270, was determined to have been continued to 4/17 via the application and consideration of information that was known or should have been known as being erroneous.

My subsequent hearing of 2/17/15 (see: attached Parole Decision Sheet of 2/17/15) was a rehearing of the above referenced 2/17/12 hearing.

It is of much concern to myself, family and supporters that the continuance date is the exact same date as that of the "VOIDED" 2/17/12 hearing.

Sir, please be assured that I AM NOT challenging the discretionary authority of the Ohio Parole Board, nor am I asserting a right to a parole release prior to the expiration date of my sentence. But rather am presenting to you the question in rational, analytical minds of the likelihood of the exact same date determination of continuance being determined at both hearings, (when the 2/17/12 hearing utilized information that was not accurate or factual - and the 2/17/15 hearing utilized corrected and additional information - in terms of the length of time served to date, program completions and positive institutional conduct?).

It is also of much concern, that a determination was made in section 3b rationale...."that there is substantial reason to believe that Keith will engage in further criminal conduct." I respectfully request the information or factors that lead the OPB to come to that belief, so that I can address that concern through further rehabilitative programming and alleviate the possibility of this reasoning re-surfacing at any subsequent hearings. I assure you that it is not my design or direction to ever engage in any type of criminal activity.

It should also be noted, the lack of intent and culpability of my instant offense as reflected in the Police Report of my arrest on April 16, 2011 by the Parma Police Dept. (see: Parma Police Dept. Investigative Report - a copy of which was/is attached to documentation submitted at my Kellogg mitigation Hearing.

In addition, the aforementioned reasoning by the OPB as reflected in the rationale of section 3b is absent of any programming directives to enhance my future parole eligibility. Is this to reflect that the OPB's attitude regarding me is one of punitive incarceration, with no consideration of the possible benefits of positive programming or any positive adjustment history.

For the reasons as contained herein, I respectfully request re-consideration and/or an admendment [sic] to the decision of my 2/17/15 hearing that is reflective of that hearing having been more than just a cursory compliance to the directive of the Courts.

(Emphasis sic.)

{¶ 44} 12. Relator's March 20, 2015 letter prompted a written response dated April 9, 2015 from Ohio Parole Board acting Chair Andre Imbrogno:

Your request for reconsideration of a previous Parole Board decision was received and processed. DRC Policy No. 105-PBD-04 *Requests for Reconsideration and Amendments to Parole Board Actions* outlines circumstances under which rescission and reconsideration of the outcome of a parole hearing is permitted. Requests for reconsideration must be based on, and specifically refer to, relevant and significant new information that was either not available or not considered at the time of the hearing. In addition, any new information that forms the basis of a reconsideration request must be submitted without reasonable delay.

Your request and all other relevant information was reviewed. It has been determined that your request does not meet the standard for reconsideration as set forth in policy. The Board considered the information that you identify in your request, including the certificate of program completion that you attached to your request, which the Board considered during its Central Office Board Review.

> Therefore, no modification will be made to the last action of the Parole Board. The decision sheet you received clearly outlines the Board's rationale.

(Emphasis sic.)

{¶ 45} 13. On November 30, 2015, relator filed the instant mandamus action.

{¶ 46} 14. On February 25, 2016, respondents filed their answer to the complaint.

{¶ 47} 15. Pursuant to the magistrate's scheduling orders, on May 13, 2016, relator filed a document captioned "Relator's Evidentiary Materials In Support of Claim/Complaint," hereafter referred to as relator's evidence.

{¶ 48} 16. On May 26, 2016, respondents filed a document captioned "Respondents' Presentation of Evidence," hereafter referred to as respondents' evidence.

{¶ 49} 17. With respondents' evidence, respondents submitted the affidavit of Andre Imbrogno, executed May 26, 2016.

{¶ 50} In his affidavit, Imbrogno avers:

> 2. I am currently employed by the Ohio Department of Rehabilitation and Correction ("ODRC") as Chair of the Ohio Parole Board ("Parole Board"). The Parole Board is a section within the ODRC's Adult Parole Authority ("APA"). I have worked for the Parole Board since July 1, 2012, and have served as its Chair since November 15, 2015.
>
> 3. As Chair, my duties include overseeing the operation of the Parole Board. I review, interpret, and sign off on Parole Board release decision sheets when an inmate is considered for release on parole. This is done to ensure, in part, that the applicable policies and statutory provisions that govern parole release consideration hearings are followed. I reviewed documentation germane to the parole release consideration hearings held for the plaintiff in this case, inmate Bernard Keith, #A620-809, February 17, 2015, and/or March 12, 2015, at the request of Assistant Attorney General William D. Maynard. The documents, including those accompanying this affidavit and marked as Respondent's Exhibit E, are true and accurate copies of documents kept within the normal course of business by ODRC's Central Records Division.
>
> 4. As a consequence of the decision issued by the Ohio Supreme Court in *State ex rel. Keith v. Ohio Adult Parole*

*Authority, et al.,* No. 2014-Ohio-4270, the Parole Board made corrections to inmate Keith's (#A620-809) record, which included voiding the original decision sheet from inmate Keith's February 17, 2012 parole release consideration hearing. The Parole Board rescinded the action taken by the Board at the February 2012 hearing and scheduled inmate Keith for a rehearing of his case for parole release consideration in February of 2015 * * *.

5. At inmate Keith's (#A620-809) parole release consideration hearing held on February 17, 2015, a recommendation was made to refer the case for Central Office Board Review ("COBR") * * *.

6. On March 12, 2015, after considering the mandatory factors indicated in Administrative Rule ("AR") 5120:1-1-07, it was the determination of COBR that inmate Keith (A620-809) was not suitable for release to parole and instead should be continued for another parole release consideration hearing to be held April 1, 2017 * * *. As Chair of the Parole Board, I signed off on the COBR decision, validating the parole release consideration hearing process as conducted * * *.

7. I did receive a correspondence from inmate Keith (#A620-809) dated March 20, 2015, requesting reconsideration of the COBR decision of March 12, 2015, pursuant to ODRC Policy 105-PBD-04 * * *. I subsequently responded to inmate Keith's request for reconsideration pursuant to ODRC Policy 105-PBD-04 via correspondence dated April 9, 2015 * * *. In this correspondence, I informed inmate Keith that it had been determined that his request for reconsideration of the outcome of his parole release consideration hearing of March 12, 2015, did not meet the standard for reconsideration as set forth in policy. In particular, I informed inmate Keith that the "Board" had considered the information that he had identified in his request, including the certificate of program completion that he had attached to his request "... [d]uring its Central Office Board Review" * * *. I further informed him that the [Parole Board] decision sheet that he had received clearly outlined the Board's rationale for continuing his next parole release consideration hearing until April 1, 2017. * * *.

8. Inmate Keith's (#A620-809) next parole release consideration hearing is currently scheduled to take place in April 2017 (February 2017 actual).

{¶ 51} 18. Pursuant to the magistrate's scheduling orders, relator filed his merit brief on May 13, 2016.

{¶ 52} 19. On June 30, 2016, respondents filed their merit brief.

{¶ 53} 20. On August 1, 2016, relator filed a reply brief.

{¶ 54} 21. This mandamus action is now submitted to the magistrate for his magistrate's decision.

Conclusions of Law:

{¶ 55} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

### First Issue

{¶ 56} Analysis begins with the observation that relator does not challenge respondents' compliance with the writ of mandamus issued by the Supreme Court of Ohio in *Keith II.*

{¶ 57} As earlier noted, in *Keith II*, the court issued a writ of mandamus ordering respondents to investigate Keith's allegations and correct any substantive errors in the record used to consider him for parole, consistent with the opinion of the court.

{¶ 58} Appended to relator's complaint is the October 16, 2014 letter of Assistant Attorney General Gene D. Park and the October 10, 2014 letter of Ohio Parole Board Chair Cynthia Mausser.

{¶ 59} In his October 16, 2014 letter, Park identifies and lists the alleged errors and then addresses each alleged error. In so doing, Park references the October 10, 2014 Mausser letter that addresses the errors. Mausser indicates that her letter will be placed in Keith's file. Park's letter concludes that "[t]he Ohio Parole Board has thus complied with the order of the Ohio Supreme Court in this matter."

{¶ 60} In this action, relator expresses no disagreement with the October 16, 2014 Park letter or the October 10, 2014 Mausser letter. Accordingly, the magistrate concludes that respondents have complied with the writ of mandamus issued by the *Keith II* court.

### Second Issue

{¶ 61} Here, relator suggests that the March 12, 2015 COBR failed to consider relator's successful completion of a program titled "Criminal and Addictive Thinking." The suggestion is incorrect.

{¶ 62} As earlier noted, on February 19, 2015, two days after the February 17, 2015 parole board hearing that resulted in referral to COBR, relator sent a letter to Parole Board Chair Andre Imbrogno indicating concern that the parole board may not have been aware of his successful completion of the program. The February 19, 2015 letter indicates that relator appended a copy of a "Certificate of Participation" in the program titled "Criminal and Addictive Thinking."

{¶ 63} As earlier noted, by letter dated April 9, 2015, Imbrogno informed relator that "[t]he Board considered the information that you identify in your request, including the certificate of program completion that you attached to your request, which the Board considered during its Central Office Board Review."

{¶ 64} Moreover, in his May 26, 2016 affidavit, Imbrogno avers at paragraph seven that he corresponded with relator by letter dated April 9, 2015 in which he informed relator that the board had considered the information regarding "the certificate of program completion."

{¶ 65} Based on the foregoing evidence in the record, the magistrate concludes that the "Certificate of Participation" in the program titled "Criminal and Addictive Thinking," was considered at the March 12, 2015 hearing. Accordingly, relator's suggestion to the contrary is not well-taken.

### Third Issue

{¶ 66} As earlier noted, in denying parole following the March 12, 2015 COBR hearing, respondents completed a parole board form captioned "Ohio Parole Board Decision and Minutes." In his merit brief, relator seems to argue that respondents abused their discretion in completing the form by failing to identify the positive factors in relator's parole board records and by failing to explain why those factors were found not to compel the conclusion that relator should be released on parole. In that regard, relator states in his brief:

> The above referenced rationale in section 3B of Relator's
> Parole Decision Sheet of 3/12/2015 makes no mention or

reference to Relator's positive rehabilitative actions, conduct, programming, family support or any factors other than Relator had served "over 3 years on his current incarceration."

It is the contention of Relator that the absence of any reference to Relator's positive programming, security status, conduct, family support and other indicators reflecting his fitness to be at liberty in the community without being a threat, from Relator's Parole Decision Sheet of 3/12/15 section 3B is not supportive of the application of "meaningful consideration" and suggest[s] that the hearing of 2/17/15 may have been a hearing just to cursory [sic] comply with the issuance of the Writ of Mandamus.

(Relator's Brief at 27.)

{¶ 67} Relevant here is Ohio Adm.Code 5120:1-1-07 effective April 15, 2010, an administrative rule cited and quoted by the court in *Keith II*. Ohio Adm.Code 5120:1-1-07 currently states:

(A) An inmate may be released on or about the date of his eligibility for release, unless the parole board, acting pursuant to rule 5120:1-1-10 of the Administrative Code, determines that he should not be released on such date for one or more of the following reasons:

(1) There is substantial reason to believe that the inmate will engage in further criminal conduct, or that the inmate will not conform to such conditions of release as may be established under rule 5120:1-1-12 of the Administrative Code;

(2) There is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice nor be consistent with the welfare and security of society;

(3) There is substantial reason to believe that due to serious infractions of rule 5120-9-06 of the Administrative Code, the release of the inmate would not act as a deterrent to the inmate or to other institutionalized inmates from violating institutional rules and regulations;

\* \* \*

**(B) In considering the release of the inmate, the parole board shall consider the following:**

**(1) Any reports prepared by any institutional staff member relating to the inmate's personality, social history, and adjustment to institutional programs and assignments;**

**(2) Any official report of the inmate's prior criminal record, including a report or record of earlier probation or parole;**

**(3) Any presentence or postsentence report;**

**(4) Any recommendations regarding the inmate's release made at the time of sentencing or at any time thereafter by the sentencing judge, presiding judge, prosecuting attorney, or defense counsel and any information received from a victim or a victim's representative;**

**(5) Any reports of physical, mental or psychiatric examination of the inmate;**

**(6) Such other relevant written information concerning the inmate as may be reasonably available, except that no document related to the filing of a grievance under rule 5120-9-31 of the Administrative Code shall be considered;**

**(7) Written or oral statements by the inmate, other than grievances filed under rule 5120-9-31 of the Administrative Code.**

\* \* \*

**(9) The inmate's ability and readiness to assume obligations and undertake responsibilities, as well as the inmate's own goals and needs;**

**(10) The inmate's family status, including whether his relatives display an interest in him or whether he has other close and constructive association in the community;**

\* \* \*

(12) The inmate's employment history and his occupational skills;

(13) The inmate's vocational, educational, and other training;

* * *

(18) Any other factors which the board determines to be relevant, except for documents related to the filing of a grievance under rule 5120-9-31 of the Administrative Code.

(C) The consideration of any single factor, or any group of factors, shall not create a presumption of release on parole, or the presumption of continued incarceration. The parole decision need not expressly address any of the foregoing factors.

{¶ 68} Ohio Adm.Code 5120:1-07(C) answers relator's argument. That is, the rule provides that "[t]he parole decision need not expressly address any of the foregoing factors."

{¶ 69} Given Ohio Adm.Code 5120:1-07(C), the parole board was not required to complete the parole board form such that the positive factors are identified along with an explanation as to why the factors were found not to compel the conclusion that relator should be released on parole.

### Fourth Issue

{¶ 70} In his reply brief, relator endeavors to make an issue regarding an item that is listed in an ODRC document captioned "Full Institutional Summary Report" ("FISR").

{¶ 71} A section of the FISR captioned "Job History" contains a total of 46 entries presented over 3 pages. The 46 entries are listed under 6 headings. The 20th entry is listed under the 6 headings as follows:

| Institution | Job Name | Department | Location | Start Date | End Date |
|---|---|---|---|---|---|
| GCI | STUDENT | EDUCATION | GED FAST TRACK | 2010-01-14 | 2010-01-28 |

The 22nd and 24th entries listed under the 6 headings are as follows:

| Institution | Job Name | Department | Location | Start Date | End Date |
|---|---|---|---|---|---|

| GCI | STUDENT | EDUCATION | VOC WELDING | 2009-04-21 | 2009-07-09 |
|-----|---------|-----------|-------------|------------|------------|
| GCI | STUDENT | EDUCATION | VOC WELDING | 2008-06-26 | 2009-04-09 |

According to relator's reply brief:

This institutional assignment is inaccurate. Relator has attended numerous colleges (Shawnee State Comm. College, Ohio University, Akron, several vocational programs, and actually obtained his G.E.D. in 1976. (see: affidavit of verity of Relator referencing education history.)

This institutional assignment error could be argued as possibly causing deciding Parole Board members to "think" that Relator was (at that time, 1/14/2010) a 56 year old prisoner that had not completed his GED, thus eliminating the likelihood of gainful employment because of the lack of education, being that a G.E.D. or High School Diploma is generally the minimum prerequisite for legitimate employment. Thus the information that was provided to "the Parole Board in connection with Relator's prc hearings held February 17, 2015 and/or March 12, 2015" (Brief of Respondents, page 10, line 3), could be interpretated [sic] as further evidence of use/consideration of inaccurate, irrelevant information in violation of the holding of the OSC in Keith v. OAPA, 2014-Ohio-4270, at ¶ 25, ¶ 26, & ¶ 32.

Validation of Relator's claim of the inaccuracy of the Fast Track G.E.D. assignment, * * * by the correct assignment of Relator as a student in a Voc. Welding class during 2008-06-26 until 2009-07-09 * * *. It is a requirement of participation in vocation training program, that participants possess either a high school diploma or a G.E.D. Therefore, before Relator was admitted into the Voc. Welding program, it had already been determined that he was qualified educationally.

* * *

* * * [A] prisoners [sic] educational accomplishments are to be considered in/at a Release Hearing. In the case of Relator, the mis-assignment for G.E.D. Fast Track could have possibly lead to a inaccurate assessment of Relator.

> While the argument of the inaccurate assignment [sic] is not the basis of this instant claim of the absence of meaningful consideration at Relator's Parole Release Consideration hearing of 2/17/15 and the subsequent COBR hearing of 3/12/15.

(Reply Brief at 10-12.)

{¶ 72} It should be noted that relator's argument was presented for the first time in his reply brief. Consequently, respondents have not had the opportunity to respond.

{¶ 73} It should also be noted that relator's argument was not referenced in the correspondence from relator to the parole board following the February 17 or March 12, 2015 hearings. That is, relator's reply brief argument or issue was not raised in relator's March 20, 2015 letter to Parole Board Chair Andre Imbrogno. Consequently, Imbrogno did not respond to the argument in his April 9, 2015 letter to relator.

{¶ 74} Relator further endeavors to support his reply brief argument with his affidavit executed July 22, 2016 appended to his reply brief. Relator's affidavit avers:

> I, BERNARD R. KEITH, RELATOR IN CASE NO. 15AP-1080, EX REL. KEITH V. ODRC et al. DO HEREBY STATE UNDER THE PENALTY OF PERJURY THE BELOW LISTED STATEMENTS REGARDING MY EDUCATIONAL HISTORY ARE TRUE AND FACTUAL:
>
> 1). I completed and passed the G.E.D. exam while at the Marion Correctional Institution in 1975.
>
> 2). I enrolled and took correspondence courses from Ohio University in Business Mgt. in 1975 - 1976.
>
> 3). I enrolled and received an Assoc. Degree from Shawnee State Community College in 1977 - 1979.
>
> 4). I enrolled but did not complete a vocational program in meat-cutting in London Ohio in 1980.
>
> 5). I completed a vocational program in Building Maint. in 1989 while at the Chillicothe Corr. Inst.

6). I complete[ed] a course in Machine Shop operations at the Grafton Corr. Inst. in 1999.

7). I completed a welding course at the Grafton Corr. Inst., in 2009.

All vocational programs require the possession of a G.E.D. or High School Diploma.

I have never been enrolled in a G.E.D. Program in 2010.

All information regarding my educational history is contained in the records of the Ohio Central School System, of which Respondents have access to the records/files of.

{¶ 75} Contrary to relator's suggestions here, the "GED Fast Track" entry in the FISR does not state that relator failed to complete his GED during the year 2010. If anything, the entry suggests something positive in relator's educational history, although the entry itself provides only scant information.

{¶ 76} Accepting as true for argument's sake that relator completed and passed the GED exam in 1975, as his affidavit avers, it does not necessarily follow that the "GED Fast Track" entry is inaccurate.

{¶ 77} In mandamus, the relator must prove his or her entitlement to the writ by clear and convincing evidence. *State ex rel. Doner v. Zody,* 130 Ohio St.3d 446, 2011-Ohio-6117.

{¶ 78} Here, relator has failed to prove by clear and convincing evidence that "materials relied on at a parole hearing were substantively inaccurate" and that any errors in the record were "significant." *Keith II* at ¶ 28.

{¶ 79} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).